**Robert PIENTA, Theodore Pryka, Richard McGraw, and Vincent DeGeorge, Plaintiff,**

v.

**The VILLAGE OF SCHAUMBURG, ILLINOIS, Martin J. Conroy, individually and in his capacity as Chief of Police of the Village of Schaumburg, and Martin Coniglio, Fred Volkening and Ben Baren, in their capacities as members of the Fire and Police Commission of the Village of Schaumburg, Defendants.**

No. 81 C 1355.

United States District Court, N. D. Illinois, E. D.

April 7, 1982.

Harvey Grossman, Diane C. Geraghty, Loyola Univ. School of Law, Chicago, Ill., for plaintiff.

Robert Marc Chemers, Pretzel, Stouffer, Nolan & Rooney, Jack M. Siegel, Jack M. Siegel & Associates, Ltd., Chicago, Ill., for defendants.

MEMORANDUM

LEIGHTON, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 and the First, Fourth, Ninth and Fourteenth Amendments to the United States Constitution, challenging the constitutionality of two regulations of the Schaumberg Police Department (SPD), General Order 79–59 and Administrative General Order 79–9, Schaumberg Police Department Standard Operating Procedure

Code. Plaintiffs are two present and one former officer in the SPD and one civilian employee. Defendant Martin Conroy is and at all relevant times has been the Chief of Police of the Village of Schaumberg; as such he is responsible for the promulgation and enforcement of the rules in question. Defendants Martin Coniglio, Fred Volkening and Ben Baran are presently and at all relevant times have been members of the Fire and Police Commission of the Village of Schaumberg. Plaintiffs allege that the regulations, which provide that employees on injury leave or sick leave must remain in their residences at all times except for matters relating to their injury or illness, violate their constitutionally protected rights. Defendants contend that Orders 79–59 and 79–9 are a valid exercise of the SPD's power to regulate its employees. The cause is before the court on plaintiffs' motion for summary judgment. After careful consideration of the parties' submissions, the court concludes that the regulations are unconstitutional in that they infringe upon fundamental constitutional rights; they are not closely tailored to meet a compelling state interest.

Plaintiff Theodore Pryka was injured on duty on November 11, 1980 and was on injured-on-duty leave from that date until March 9, 1981. Plaintiff Robert Pienta was on injured-on-duty leave from July 11, 1980 until December 17, 1980. Plaintiff Richard McGraw was on injured-on-duty leave from September 3, 1980 until December 15, 1980. Plaintiff Vincent DeGeorge was on injured-on-duty leave from August 2, 1980 until February 15, 1981 when he voluntarily terminated his employment with the SPD. General Order 79–59 and Administrative General Order 79–9 were enacted on September 16, 1980, effective immediately, to include the provisions at issue in this case. After the amendment of the Orders, plaintiffs and their families were subjected to frequent calls and unannounced visits by police department personnel, and surveillance by police department personnel both inside and outside their homes.

The Orders in pertinent part provide:

General Order 79–59

\*   \*   \*   \*   \*   \*

F. Absence from Home:

(2) Employees on injury leave must remain at their residences at all times except for matters that relate to their injury. (Exception: hospitalized personnel.) Each time it is necessary for an employee to leave their residence to go to a hospital or visit a doctor or secure medicine, they must notify the Schaumberg Police Department Communications Section and leave notice with the Communications officer as to the doctor's name and address that they are going to visit (hospital, drugstore, etc.). Upon returning home, they will again notify the Communications Section by phone of their return.

G. Personnel on injury leave will not change their place of recuperation or leave the state without authorization from the Chief of Police

Administrative General Order 79–9

\*   \*   \*   \*   \*   \*

B. It shall be the responsibility of all personnel reporting sick to remain at their residences until their next tour of duty. (exception—if a scheduled day off immediately follows a sick day, the residency requirement will end at 0001 hours on the scheduled day off), unless they must go to a hospital or visit their doctor or secure medicine for their illness. However, if any personnel must leave their residence during the sick period, it shall be their responsibility to notify the Schaumberg Police Department Communications Section and leave notice with the Communications officer as to the doctor's name and address that they are going to visit, drug store, hospital, etc., and they will notify the Communications officer upon their return to their residence.

C. Personnel on sick leave will not change their place of recuperation or leave the state without authorization from the Chief of Police.

\*   \*   \*   \*   \*   \*

I. The Administrative Division Commander with approval of the Chief of Police may grant personnel stricken with serious illness or injury permission to leave their residence during the period of recuperation without requiring telephone notification to the Police Department (i.e. heart attacks, major operations, broken limbs or serious injuries).

A violation of these regulations is punishable, at the Chief's discretion, by a five-day suspension without pay. Further, the Fire and Police Commission may, upon a filing of a complaint by the Police Chief, impose a longer suspension or may terminate the violator's employment.

Under these regulations, SPD employees on injured-on-duty leave or on sick leave cannot leave their homes for *any* reason other than one medically related to their injury. By placing such restrictions on the activities of injured or sick SPD employees, the regulations infringe on several constitutionally protected rights, including the right to vote, the right to free exercise of religion and the right to travel. That these rights are "fundamental" under our constitution cannot be questioned. *See School District of Abington v. Schempp*, 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963); *Shapiro v. Thompson*, 394 U.S. 618, 629, 89 S.Ct. 1322, 1328, 22 L.Ed.2d 600 (1969); *Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972). The regulations impinge on more than just these specific recognized rights, however, for the SPD employees who fall under their coverage are denied "the freedom to care for [their] health and person; freedom from bodily restraint or compulsion [and the] freedom to walk, stroll or loaf." *Roe v. Wade*, 410 U.S. 113, 213, 93 S.Ct. 705, 758, 35 L.Ed.2d 147 (1973) (Douglas, J., concurring). They are, in effect, made prisoners in their own homes, and are deprived of their personal, individual liberty. Defendants contend that the regulations do not infringe on any constitutional rights because they do not on their face prohibit any protected activity and there are alternative means for any affected employees to exercise their rights. Defendants miss the point. A law neutral on its face may still infringe upon constitutional rights; it need not explicitly bar a protected activity. *See Thomas v. Review Board of Indiana Employment Services Division*, 450 U.S. 707, 101 S.Ct. 1425, 1431, 67 L.Ed.2d 624 (1981); *Dunn*, 405 U.S. at 339, 92 S.Ct. at 1001; *Wesberry v. Sanders*, 376 U.S. 1, 17, 84 S.Ct. 526, 534, 11 L.Ed.2d 481 (1964). Accordingly, the court finds that the regulations at issue impinge on "fundamental" constitutional rights.

When rights of this nature are affected, the infringing regulations may only be justified by a showing of "compelling state interest." Further, the regulations "must be narrowly drawn to express the legitimate interests at stake." *Roe*, 410 U.S. at 155, 93 S.Ct. at 727. Defendants argue that because this case involves public employees, the proper test is whether the regulations are rationally related to a legitimate state interest. In support of this proposition, they rely on two cases, *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) and *Loughran v. Codd*, 432 F.Supp. 259 (E.D.N.Y.1976). In *Kelley*, the plaintiff, a police officer, challenged the constitutionality of a hair length regulation which he contended violated his liberty rights as protected by the Fourteenth Amendment. The court upheld the regulation on a finding that it was not so irrational as to be arbitrary. *Kelley*, 425 U.S. at 248, 96 S.Ct. at 1446. The *Loughran* case involved a police department regulation that is similar, although not identical, to the one challenged here. The district court interpreted *Kelley* as establishing a rational relationship test for all regulations governing public employees, and upheld the regulations without evaluating the rights affected by them. The approach taken by the court in *Loughran* and urged upon this court by defendants is based upon a misreading of the *Kelley* decision. The question of which test should be applied in determining the constitutionality of a particular regulation is governed by the nature of the rights affected. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 253, 94 S.Ct. 1076, 1079, 39 L.Ed.2d 306 (1974). The

court in *Kelley* did not change this rule for public employees. Instead, it looked at the interest affected and noted that it was based on the general protection of the Fourteenth Amendment rather than an express constitutional right. *Kelley*, 425 U.S. at 245, 96 S.Ct. at 1444. The Seventh Circuit, in a post-*Kelley* decision, *Div. 241 Amalgamated Transit Union v. Suscy*, 538 F.2d 1264, (7th Cir. 1976), recognized that the test used is governed by the rights affected, even where public employees are concerned. It held:

> The test of constitutionality for invasions of a public employee's protected rights are derived from the nature of the rights involved. Where the employee argues that he is being deprived of a right specifically protected by the Constitution the standard generally applicable to deprivations of that right applies. For instance, limitations on the First Amendment rights of public employees must be justified by a compelling state interest.

*Suscy*, 538 F.2d at 1266. Thus, as the rights infringed here are fundamental, the test is compelling state interest.

Defendants cite numerous state interests that the regulations serve. Upon reading, these interests can be narrowed down to the two main purposes of the regulations: (1) to provide an efficient method of administering the sick and injury leave policies while providing for the personnel needs of the SPD; and (2) preventing abuse of those policies. While there is no doubt that these objectives are important, they are not of the same weight as those interests which have been found to be compelling in the past. For example, in *Roe v. Wade*, the court found the state's interest in protecting the life of the fetus compelling, 410 U.S. at 163; and in *CSC v. Letter Carriers*, 413 U.S. 548, 564–565, 93 S.Ct. 2880, 2889–2890, 37 L.Ed.2d 796 (1973), the court found the federal government's interest in ensuring politically neutral operation to be compelling and upheld regulations barring federal employees from participation in certain political activities. Even in light of the fact that the state's interest in regulating public employees is greater than the state's interest in regulating private citizens, *Kelley*, 425 U.S. at 245, 96 S.Ct. at 1444, the court concludes that the predominately administrative concerns which are served by General Order 79–59 and Administrative General Order 79–9 do not rise to the level of compelling state interests.

Even assuming that the state interests served by the regulations are compelling, the test for constitutionality would still not be met because General Order 79–59 and Administrative General Order 79-9 are overbroad and unnecessarily infringe on constitutionally protected activity.

> [A] state may not [citation omitted] choose means that unnecessarily restrict constitutionally protected liberty. 'Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms.' *NAACP v. Button*, 371 U.S. 415, 438 [83 S.Ct. 328, 340, 9 L.Ed.2d 405] (1963). If the State has open to it a less drastic way of satisfying its legitimate interests, it may not choose a legislative scheme that broadly stifles the exercise of fundamental personal liberty. (citation omitted)

*Kusper v. Pontickes*, 414 U.S. 51, 58–59, 94 S.Ct. 303, 308, 38 L.Ed.2d 260 (1973). The regulations in question create a broad prohibition that bars SPD employees who are on sick or injured leave from exercising their fundamental rights regardless of whether a particular activity is consistent with the department's sick and injured policies. Thus, under the regulations, an employee with a broken limb who may not be ready to return to work, but who is mobile, cannot attend religious services or even go outside for some fresh air. Or an employee who is home with the flu who gets a call from the school saying his child has been injured cannot leave his home to respond. In fact, under these regulations, an employee who is home with a bad cold and who is stricken with a heart attack *may* get "permission to leave [his/her] residence during the period of recuperation without requiring telephone notification to the Police Department." (Administrative General Order 79–9, ¶ I) Defendants argue that the regulations are not overly broad because an employee who is too sick to go to work

should not be anywhere other than at home. The hypotheticals posed by the court, as well as simple common sense, point out the unrealistic nature of this argument. Allowing the employees in the cited examples to leave their homes would not be inconsistent with the SPD's desire to prevent abuse of its policies and to maintain a sufficiently numerous work force. If the SPD is going to place restrictions on its employees' lives outside of work, it must, at a minimum, relate those restrictions to the purpose to be served. The present regulations do not provide a sufficient relation between the ends served and the means; they do not take into consideration the injury or the illness involved, the recuperation period, the activity to be engaged in, or any other outside criteria. Rather, they place a broad restriction on the lives of SPD employees on sick and injured leave. In doing so, they unnecessarily infringe on those employees' fundamental constitutional rights and are consequently unconstitutional.

For the above reasons, the court finds General Order 79–59 and Administrative General Order 79–9 to be unconstitutional. Accordingly, plaintiffs' motion for summary judgment is granted. The parties are invited to propose an appropriate judgment order.

So ordered.