Joseph A. LOUGHRAN, Jr., Plaintiff,

v.

Michael J. CODD, Individually, as Police Commissioner of the Police Department of the City of New York and as Executive Chairman of the Board of Trustees of the Police Pension Fund, George McClancy, Individually, and as Administrative Officer, Medical Section, New York City Police Department, and Stanley August, Individually, and as District Surgeon of the City of New York Police Department, Defendants.

No. 76 C 770.

United States District Court, E. D. New York.

Nov. 18, 1976.

Harold B. Foner, Ira Leitel, Brooklyn, N. Y., for plaintiff.

W. Bernard Richland, Corp. Counsel for the City of New York, New York City, for defendants.

MISHLER, Chief Judge.

Plaintiff, a former New York City police officer, brought this action pursuant to 42 U.S.C. § 1983 seeking injunctive and declaratory relief, as well as monetary damages, for the alleged deprivation of his civil rights by Police Department officials. Loughran attacks both the facial constitutionality and the arbitrary and capricious application of a Department promulgation[1] that generally restricts a member on sick report to the confines of his residence, permitting him to leave only when authorized by the district surgeon.

Loughran, appointed to the Police Department on February 15, 1963, suffered a series of back injuries between 1966 and 1971. Their aggravating nature caused him to be assigned to restricted duty[2] by the Department's district surgeon in March, 1972. Plaintiff was thereafter examined in February, 1973, and November, 1974, by the Department's orthopedic surgeon. Owing to his physical condition, Loughran was placed on sick report with full pay in February, 1975, and so remained performing virtually no duty[3] until his disability retirement in June, 1976.

Section 22/2.1 of the Police Department's Rules and Procedures provides:

> A member of the force on sick report shall not leave his residence or place of confinement except by permission of his district surgeon or for the purpose of visiting a police surgeon . . . . Permission shall not be granted for a period of longer than one week. Before granting a renewal of such authorization the district surgeon shall reexamine the necessity therefor . . .

Pursuant to this provision, Loughran was initially granted permission to leave his residence three hours a day. A plea by union officials later that year to extend plaintiff's hours was denied. But in late 1975, Loughran's personal appeal led the district surgeon to increase the hours of authorized leave; daily he was permitted to be away from his residence between 11:00 a. m. and 2:00 p. m. and from 6:00 p. m. to 8:00 p. m.

During the several months of restriction, Loughran was examined on a weekly basis by the Department's district surgeon, Dr. Stanley August. Plaintiff also sought private care, and received continuous treatment from Dr. John Carrington, an orthopedic surgeon. Further medical evaluation came from the members of the Medical Board of the Police Pension Fund who were responsible for passing on plaintiff's application for ordinary disability retirement.

---

1. Section 22/2.1 of the Police Department's Rules and Procedures.

2. While on "restricted duty", a member generally receives light assignments, such as administrative tasks, yet works a full day. An officer on sick report, however, performs no police duties, but continues to receive full pay. Entitlement to unlimited sick leave benefits is open to all Department members.

3. The only exceptions were in February and March, 1975, when plaintiff reported for restricted duty on two occasions only to return to sick report within two days each time.

Sometime in early 1976, the exact time being unknown, Loughran was certified by District Surgeon August as capable of returning to restricted duty. Plaintiff, who continued to receive outside treatment, sought to controvert the determination and submitted letters from private practitioners indicating their belief in Loughran's inability to return to work. As a result, Loughran continued on sick report, received full pay, and was still permitted to leave his residence only five hours per day.

In March, 1976, it came to the attention of defendant McClancy, the Department's Medical Section Administrative Officer, that Loughran held the position of head coach of the Police Department football team during the tenure of his sick leave. It was McClancy's flat and candid position that plaintiff should be barred from participating in athletic activities that were inconsistent with his status and which might cause further aggravation to his condition. So as to ensure his timely return to service, McClancy summarily ordered plaintiff's hours be curtailed. Defendant August, pursuant to McClancy's unilateral decree, issued the formal dictate on March 12, 1976, reducing permitted leave to two hours per day. Loughran, in response, sought reinstitution of his previous hours by submitting a letter from his private doctor which recommended "conservative therapy including . . . swimming daily and walking daily." McClancy, without consulting either the district surgeon or plaintiff's private doctor, denied the request.

The following month, defendant August and plaintiff's physician, Dr. Carrington, conferred, and both concluded that Loughran should return to restricted duty. Accordingly, plaintiff reported to work on April 12, 1976. However, he rejected the proffered assignment claiming the Department's offer was not in conformity with an agreement to provide him activity consistent with a rehabilitative schedule. Plaintiff, therefore, returned to sick report and remained confined to his home 22 hours per day.

On April 28, 1976, Loughran filed this suit alleging a deprivation of his constitutional right to travel and the denial of due process in the arbitrary application of the subject Department promulgation. As well, plaintiff attacked the facial constitutionality of the provision. On June 2, 1976, Loughran was granted an ordinary disability retirement after his condition was diagnosed as a herniated disc. Accordingly, his suit for injunctive relief was withdrawn, but he continues to press his claim for declaratory relief and damages. The matter is now before the court on defendants' motion for summary judgment and plaintiff's cross-motion for the same.

It is Loughran's contention that as a result of McClancy's unilateral actions he has arbitrarily been deprived of the opportunity to engage in a rehabilitative program of physical therapy. Plaintiff argues that under the subject Department regulation, there having been no arrest, no charges brought or allegations made, nor any hearing or judicial order, he is being confined without due process of law. As a result, plaintiff argues, his constitutional right to travel has been unjustifiably curtailed. Depicting the infringement as one of "fundamental rights", Loughran contends only a compelling state interest will serve to justify the significant encroachment, adding that only the least restrictive alternative should be judicially tolerated.

Defendants, in turn, rely on the reasonableness of the provision in question. Noting that every member of the Department enjoys unlimited sick leave with full pay, it is the defendants' position that the liberality underlying sick leave benefits commands that a mechanism be established to prevent abuse and foster the expeditious return to duty. Defendants contend that the Police Department, in the dispatch of its own internal affairs, should be accorded wide latitude by the courts; judicial intervention, it is argued, is not warranted where administrative policy and practice is neither arbitrary nor irrational.

Whether the restrictions imposed are a constitutionally impermissible abridgement on plaintiff's right to travel is

the threshold question that must be examined. While the right to travel has repeatedly been recognized as a basic constitutional freedom, *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1971), *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1968), its exercise is not without certain limitations. The proper standard against which any limitation must be evaluated in assessing its validity under the due process clause is a function of the cost the restriction may tend to impose on the exercise of the right. Only when the restriction serves to "penalize" the practice of this constitutional freedom must the state proffer a compelling reason in order to justify the infringement. *Memorial Hospital v. Maricopa County*, 415 U.S. 250, 257–258, 94 S.Ct. 1076, 1081, 39 L.Ed.2d 306 (1974).

Loughran alleges that the restriction imposed by Department officials resultingly precluded his participation in necessary physical therapy and rehabilitation programs. Facially, plaintiff's allegations implicate the denial of a "necessity" that might be construed a "penalty." *Memorial Hospital v. Maricopa County, supra* at 259, 94 S.Ct. at 1082. The terms of confinement, allegedly imposed under the threat of penalty or dismissal, arguably extracted a price on the free exercise of the right to travel, i. e., the denial of medical treatment. At first blush, therefore, it would seem that a compelling state interest must be shown if the restrictions are to be found constitutionally permissible.

█ Yet we must remain mindful of the capacity in which plaintiff brings this suit. Loughran seeks the court's protection not as an ordinary citizen, but as an employee of the New York City Police Department. The distinction is a marked one, for the City, as an employer, retains unique interests in regulating the activities of its own employees that are simply not evident with the regulation of the general populace. *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 1444–45, 47 L.Ed.2d 708 (1976), citing *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968). All department members enjoy unlimited sick leave with full pay. A restriction on the permissible number of annual sick days, evident in most police departments across the nation, is not imposed on New York City officers. Accordingly, some restrictions on the activity of a member on sick report are wholly necessary if malingering is to be minimized and abuse curtailed. *Gissi v. Codd*, 391 F.Supp. 1333, 1336 (E.D.N.Y.1974). Department officials should rightly have available an effective means by which to verify the legitimacy of an officer's disability claim and the necessity for his absence from duty. The subject promulgation is directed at this end; the purpose it serves is to ensure that a disabled member performing no duty does not partake in activity that is inconsistent with his status and which might undermine his expeditious return to service.

█ The uniqueness of the city's interests and its consequent choice of alternatives by which to protect those interests are entitled to a presumption of legislative validity. *Kelley v. Johnson*, 425 U.S. at 245–249, 96 S.Ct. at 1445–46. Traditionally, government agencies have been granted the widest latitude in the dispatch of its own affairs. *Rizzo v. Goode*, 423 U.S. 362, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976). Hence, the compelling-state-interest test, which would be properly employed in the context of a civilian complaint, should play no part where the challenge is by a city employee and is directed at an agency's internal policies. Rather, the proper standard of evaluation, in keeping with the caveat that warns against judicial intervention into administrative policy making, is whether the promulgation enacted ". . . is so irrational that it may be branded 'arbitrary', and therefore a deprivation . . ." in due process terms of Loughran's constitutional right to travel. *Kelley v. Johnson*, 425 U.S. at 248, 96 S.Ct. at 1446.

█ The rationality of the subject restriction can hardly be questioned. The city, in affording the most liberal sick leave benefits to its police officers, maintains a scheme riddled with potentialities for abuse.

Department officials are faced with a multi-dimensional management problem. Not only must they track the individual rehabilitative progress of the disabled member and foster his expeditious return to duty, but they must, in the larger context, encourage Departmental efficiency and soothe the additional burdens imposed on working officers caused by their colleague's absence. As such, the regulation serves to promote morale by minimizing "gold-bricking" thereby assuring that each officer carries his fair share of the workload. Moreover, although the government's interest in maintaining fiscal integrity, by itself, is not decisive of due process claims, we must be cognizant of the strangulating financial conditions that prevail. *Siletti v. New York City Employees' Retirement System*, 401 F.Supp. 162, 168 (S.D.N.Y.1975). Each city agency owes a duty to the public to avoid wasteful spending and provide competent services. We find, therefore, the subject restriction to be manifestly reasonable.

■ Considering, as we must, the burden imposed on plaintiff in having to abide by the terms of the Department's order, we can only conclude that in light of the legitimate state interest intended to be served by the promulgation, it cannot be said to facially have violated Loughran's substantive due process rights. It does not appear from the evidence that plaintiff's therapeutic opportunities were substantially impeded by the operation of the regulation. When Loughran was initially authorized to depart his residence three hours a day, he argued that it did not permit the daily walking and swimming that his condition required. Yet Loughran offered no reason why the permitted hours were insufficient beyond his flat assertion. Mere walking does not require wide open terrain, and a short term daily swim could easily have been fitted into his non-regimented schedule.

Loughran was seen weekly by the district surgeon who must have been acutely familiar with Loughran's medical progress. Dr. August was clearly in a position to evaluate plaintiff's rehabilitative needs and authorize an accommodating schedule. However, he found Loughran capable of returning to restricted duty, a determination later confirmed by plaintiff's private physician after he consulted with Dr. August in April, 1976. Other than plaintiff's bald assertion that the proffered duty assignment was not "consistent with any rehabilitative schedule" (complaint ¶ 30), no concrete reason is offered for Loughran's failure to return to restricted duty. If he could as coach simply stand and direct player activity during a Department football team practice, assuming that is all he did, little reason exists why he could not perform stressless administrative services that restricted duty would entail. Moreover, his return to restricted duty would have ended the terms of the Department order confining him to quarters rendering him free to engage in whatever rehabilitative program he wanted during off duty hours.

Plaintiff's claim that a compelling-state-interest test must be applied in assessing the regulation's constitutional validity is without merit. Loughran tries to distinguish *Kelley* arguing that there only the contours of the fourteenth amendment were implicated by the Police Benevolent Association's challenge to department "hair regulations", and not the more fundamental rights like the one at issue here. While the Court in *Kelley* did admit that the liberty interest in matters of personal appearance was distinguishable from more fundamental rights such as those of procreation, marriage and family life, and that it was still an open question as to whether grooming choices were protected by the fourteenth amendment, the Court did assume for decision purposes that it was a right falling within the protections of the due process clause and announced the "irrational-arbitrary" test accordingly. *Kelley v. Johnson*, 425 U.S. at 244, 96 S.Ct. at 1444.

■ Plaintiff's reference to *Garrity v. New Jersey*, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), in support of his contention that certain constitutional rights cannot be conditioned by the exaction of the price of employment, is inapposite. While

we agree that the state cannot condition employment on the relinquishment of constitutional rights, this does not mean that they may not impose restrictive regulations that satisfy requirements of substantive due process. The Court made it perfectly clear in *Kelley* that its language in *Garrity* suggesting that "policemen . . . are not relegated to a watered-down version of constitutional rights", *Garrity v. New Jersey, supra* at 500, 87 S.Ct. at 620, did not mean that the claim of a city employee must be treated on the same constitutional plane as a private citizen's challenge. *Kelley v. Johnson,* 425 U.S. at 247–248, 96 S.Ct. at 1446. The dichotomous use of dual standard of analysis, the choice of test depending upon the character of the challenger, is wholly justified by the unique interests surrounding the regulation of a city employee. The methods employed by the Police Department, therefore, should not be the subject of unnecessary judicial scrutiny when the court is not in the position to weigh policy arguments in favor and against the regulation. The Department should be given reins to choose the managerial system it wants, as long as a rational basis is shown, without judicial oversight and intervention into its disciplinary affairs. We find, therefore, that Department officials, having shown a rational basis for the implementation of the subject restriction, have not violated Loughran's substantive due process rights.

Loughran alternatively argues that resort to summary confinement procedures, enabling Department officials to side-step the more burdensome hearing requirements mandated when dismissal is sought for malingering, violates plaintiff's rights to procedural due process. Plaintiff contends the absence of procedural safeguards, regardless of how attractive the ends served by the restriction, is per se unconstitutional. Confinement under the threat of penalty or dismissal, it is argued, may not be constitutionally effected at the particular whim of either the district surgeon or medical section commander. Plaintiff's contentions must be rejected.

What serves to satisfy the requirements of procedural due process in any given case depends upon the nature of the proceedings involved and the rights therein that may be affected. *Cafeteria and Restaurant Workers Union v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); *Siletti v. New York City Employees' Retirement System, supra* at 167. Whereas minimum requirements demand notice and some sort of review. *Goss v. Lopez,* 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), it by no means follows that a trial type hearing is required. Surely no such proceeding is necessary where it is of questionable benefit.

To argue, as plaintiff does, that implementation of the confinement order is permeated by whimsical decision making is shortsighted. Loughran, who was examined by the district surgeon weekly, had his case reviewed after each visit. Clearly Dr. August was in the best position to evaluate plaintiff's medical progress and appreciate his rehabilitative needs. The five hours leave initially authorized represented a balance between the need to promote Loughran's expeditious return while providing him free time to pursue a rehabilitative schedule. The schedule was not rigid; additional time was allowed plaintiff to receive private treatment from his outside physician. Only a single request for emergency leave to undergo therapy was denied, and the circumstances surrounding that request were suspect. Moreover, Loughran was permitted and in fact did challenge Dr. August's determination with letters from his private physician. To argue that weekly review of plaintiff's case was anything but manifestly sufficient is unreasonable. A trial type hearing would serve no purpose where questions of credibility would not likely arise, where plaintiff's interest in cross-examination was minimal, and plaintiff failed to show just what additionally he would be able to prove if afforded a hearing. *Siletti v. New York City Employees' Retirement Association, supra* at 167–168.

Loughran's allegation that defendant McClancy's unilateral decision in March,

1976 to further curtail his hours represented a capricious and constitutionally violative determination is likewise without merit. Well before McClancy's order Loughran had been deemed fit to return to restricted duty. Yet plaintiff made no attempt to perform even the lightest of administrative duties; he continued to assert his inability to work. Quite inconsistently, however, Loughran saw himself fit enough to continue functioning as head coach of the Department football team. Even assuming these duties required no strenuous activity, plaintiff's claims appeared to be mutually exclusive. Hence, McClancy's suspicions were justifiably aroused. District Surgeon August seemingly agreed, and he issued the formal dictate. Their decision to impose more restrictive conditions can hardly be considered arbitrary when, less than one month later, Loughran's own personal physician conferred with Dr. August and agreed plaintiff was able to undertake light work.

Furthermore, plaintiff's procedural due process claim is wrongly premised. Loughran, in the true sense of the word, was not "involuntarily" confined. He held the key to free movement; at any time he could have chosen to return to restricted duty and avoid the reaches of the subject provision. Plaintiff could only have been penalized or dismissed for violation of the confinement order. If charges were brought, Loughran then would have been accorded a trial type hearing.[4] Such a scheme which provides for weekly review of a member's medical progress before the imposition of restrictions and for a trial type hearing when an officer is cited for violating a confinement order satisfies the requirements of procedural due process.

Accordingly, for all the reasons heretofore cited, defendant's motion for summary motion is granted and plaintiff's cross-motion for the same is denied.

SO ORDERED.

4. Loughran was in fact cited seven times for violating the confinement order and complaints issued. A disciplinary hearing was originally scheduled in May, 1976, but was postponed

The Clerk is directed to enter judgment in favor of defendants and against plaintiff, dismissing the complaint.

pending decision on Loughran's retirement application. When plaintiff was granted an ordinary disability retirement, the matters were rendered moot.