JEANETTE ATTERBERRY vs. POLICE COMMISSIONER OF BOSTON.

Suffolk.  April 5, 1984. — July 19, 1984.

Present: HENNESSEY, C.J., WILKINS, LIACOS, LYNCH, & O'CONNOR, JJ.

*Police,* Injury on duty, Regulations. *Constitutional Law,* Public employ-
ment.

The standard of review to be applied in determining the constitutionality
of regulations governing the conduct of police officers is whether there
is a rational connection between the regulations and the State's interest
in fostering public safety by furthering the efficient operation of a police
force. [554-556]

There was no constitutional infirmity in a regulation and order of the Boston
police department requiring officers on leave because of illness or injury
to notify the department before leaving their homes for certain specified
purposes and to obtain permission from the department before leaving
their homes for any other reason. [556-557]

CIVIL ACTION commenced in the Superior Court Department
on July 29, 1982.

The case was heard by *John L. Murphy, Jr.,* J.

After review was sought in the Appeals Court, the Supreme
Judicial Court ordered direct appellate review on its own initia-
tive.

*Frank J. McGee* for the plaintiff.
*Nicholas Foundas* for the defendant.

HENNESSEY, C.J. The facial constitutionality of a rule and
special order of the Boston police department (department) is
the focus of this appeal. The plaintiff challenged the facial
constitutionality of rule 110, § 22(D), of the rules and regula-
tions of the department (rule 110, § 22[D]) and department
Special Order No. 83-1. She sought a declaration, pursuant to
G. L. c. 231A, § 1, that these regulations violated her rights
under the Massachusetts and Federal Constitutions. A judge
of the Superior Court ruled otherwise. He entered a judgment

declaring that the challenged rule and special order do not abridge her constitutional rights. The plaintiff appealed and we transferred the case here on our own motion. We agree with the trial judge and affirm his judgment.

The facts are not disputed.[1] The plaintiff is a police officer employed by the Boston police department. On July 8, 1981, while on duty, she was involved in an automobile accident as a result of which she was seriously injured. From July 8, 1981, until at least the time that the plaintiff commenced this action, she has been carried "injured on duty" by the department without loss of pay under G. L. c. 41, § 111F.[2] Rule 110, § 22(D), in relevant part states that: "The Police Commissioner may not allow pay . . . for injury on duty status . . . D. If the officer shall fail to remain at his residence unless permitted by the Police Commissioner to go elsewhere." Pursuant to this rule, the plaintiff requested permission to leave her residence several times between July 8, 1981, and August 10, 1982. Permission to leave was sometimes granted and sometimes denied. On July 29, 1982, the plaintiff filed a complaint in the Superior Court challenging the facial validity of the rule. A judge of the Superior Court entered a temporary restraining order on August 10, 1982, requiring that permission to leave

---

[1] The case was submitted to the judge on the pleadings, a stipulation of facts, and two exhibits.

[2] General Laws c. 41, § 111F, as amended by St. 1977, c. 646, § 2, provides in relevant part: "Whenever a police officer or fire fighter of a city, town, or fire or water district is incapacitated for duty because of injury sustained in the performance of his duty without fault of his own, or a police officer or fire fighter assigned to special duty by his superior officer, whether or not he is paid for such special duty by the city or town, is so incapacitated because of injuries so sustained, he shall be granted leave without loss of pay for the period of such incapacity; provided, that no such leave shall be granted for any period after such police officer or fire fighter has been retired or pensioned in accordance with law or for any period after a physician designated by the board or officer authorized to appoint police officers or fire fighters in such city, town or district determines that such incapacity no longer exists. All amounts payable under this section shall be paid at the same times and in the same manner as, and for all purposes shall be deemed to be, the regular compensation of such police officer or fire fighter."

her residence be granted to the plaintiff for certain matters.[3] The department formalized and extended the mandate of this temporary restraining order in its Special Order No. 83-1, promulgated on January 5, 1983, two days before trial of the plaintiff's claim.[4] The special order narrows rule 110, § 22(D).

[3] The judge's order provided in part: "Pending a hearing on the merits, the Plaintiff will be required to remain at her residence unless permitted by the Defendant to go elsewhere, as set forth in Rule 110, Section 22 of the Rules and Regulations of the Boston Police Department. Permission to go elsewhere, *which shall be requested in all situations,* shall not be refused for the following specific purposes: 1. To keep scheduled appointments with physicians, dentists and/or hospitals, whether or not medically related to her present injury, and for the proper care of her minor child's health. 2. To purchase food, household necessaries and medication for her present injury and for her minor child's health care. 3. To attend weekly church services. 4. To vote in the September, 1982 Primary Election, if registered . . ." (emphasis in original).

[4] Special Order No. 83-1 consists of the following:

"SUBJECT: SICK OR INJURED OFFICERS REMAINING AT THEIR RESIDENCE

"Rule 110, Section 22 provides, in part: 'The Police Commissioner may not allow pay from accumulated sick credit or for injury in the line of duty status if the officer shall fail to remain at his residence, unless permitted by the Police Commissioner to go elsewhere.'

"In order to aid in the administration of this rule, the following procedures are to be implemented effective *immediately*:

"All officers disabled from work for sickness or injury and being carried on the time books of the Department pursuant to Rule 110, ss. 4, 5, or 16, shall remain at the residence officially listed in the Department's personnel records unless they receive permission from the Operations Division or their Commanding Officer to be elsewhere.

"Officers shall contact the Operations Division to request permission to leave the residence for the following specific purposes. In each instance, with the exception noted, the Operations Division will grant permission to be absent from the residence for reasonable times for these specific purposes:

"1. To keep scheduled appointments with physicians, dentists, physical therapists, and/or hospitals, or clinics, whether or not related to the officer's present sickness or injury.

"2. To purchase food, household necessities and medication for the officer's present injury or illness or for the health care of minor children.

"NOTE: One four-hour period to complete such shopping, as described in Number 2 above, shall be granted each week. Additional requests shall be granted only for emergency purposes.

"3. To attend church services.

"4. To register to vote or to vote in elections for municipal, county, State or Federal offices, or regularly scheduled union elections.

It provides that a police officer on injured on duty status cannot be denied permission to leave her residence for certain specified purposes, but must notify the department of certain matters before leaving and upon returning. The trial judge then allowed the plaintiff to amend her complaint to include a challenge to the special order. At the time of trial, the department had 1,778

"5. To engage in physical exercise such as walking or swimming, recommended in writing by an attending physician.

"6. To answer court subpoenas in cases arising out of the officer's employment.

"7. To report to Headquarters or other police facilities when ordered to do so by a superior or commanding officer.

"The officer should make such requests by contacting the Operations Division at 247-4590. In making the request, the officer will state his purpose or purposes in leaving his residence, his destination or destinations, his planned time of departure, his method of transportation, his companions if any, and his estimated time of return to his residence. Upon returning to his residence, the officer will contact the Operations Division at 247-4590 to notify the Department that he has returned.

"Permission to leave the residence for any purpose other than those listed above will not be granted unless approved by the officer's Commanding Officer. Sick and Injured personnel should contact the commander at work during the commander's regularly scheduled working hours in order to obtain a determination prior to finalization of their plans to leave the residence.

"Officers who obtain such permission from their Commanding Officers will notify the Operations Division at 247-4590 prior to leaving the residence of the fact that they are leaving, that permission was obtained of the purpose or purposes for leaving the residence, the destination or destinations, the departure time, method of transportation, companions if any, and estimated time of return to residence.

"Upon returning to the residence, the officer will contact the Operations Division at 247-4590 to notify the Department that he has returned.

"Operations Division personnel and Commanding Officers shall maintain records of all telephone requests and whether granted; as well as report of return to residence, on the Department form provided for such purpose.

"Sick or injured officers must obtain permission for every absence from their residence until they return to work, including for time periods during which, if the officer were working, would be non-work hours or days off.

"Officers not in compliance with this order or away from their residence without permission, will receive no pay for the day of their absence, or, if normally a day off, no pay for the next regularly scheduled work day. In addition, they may be subject to discipline for violation of Department Rules and Regulations.

"The Bureau of Investigative Services, Staff Inspection Unit, and the Personnel Division shall be responsible for ensuring compliance with this order."

sworn members. Of these, 1,548 were patrol officers or detectives. Department records showed that at the time 184 sworn members of the department were on sick or injured status, of which 169 were patrol officers or detectives. Of the total figure of 184 department members, 117 had been on sick or injured status for over thirty days. Of the officers and detectives, 109 had been on sick or injured status for over thirty days.

The judge found no merit in the plaintiff's claims. In upholding the facial constitutionality of the rule and special order, he relied primarily on the United States Supreme Court's decision in *Kelley* v. *Johnson,* 425 U.S. 238 (1976). He observed that the standard of review applied in *Kelley* to determine the constitutionality of the regulations in question was whether the plaintiff could demonstrate no rational connection between the challenged regulations and the State's police powers. *Id.* at 247. The judge then applied this rational connection test to the challenged rule and special order here: "The plaintiff has argued that the restrictions under which she has been placed infringe upon fundamental rights such as the right to travel. The court agrees. However, the question before the court is not whether her rights have been in some sense infringed, but whether the infringement is unlawful. . . . Applying the standard announced in [*Kelley,*] *supra,* the court finds that the government's interest in the expeditious return of injured officers to on-duty status provides more than ample justification for the imposition of the restrictions at issue. . . . [T]he government clearly has a significant interest in assuring that continuing on sick leave is not a more attractive alternative than returning to duty. Accordingly, it cannot be said that the regulation is arbitrary."

The plaintiff's argument on appeal is in three parts. She claims that the challenged rule and special order infringe upon her constitutionally protected rights, that the rational connection standard of review employed by the judge is inapplicable, and that interests asserted by the department in support of its rule and special order are not compelling. We do not address whether the asserted interests of the department are compelling as we conclude that the judge was correct in applying the

"rational connection" test announced in *Kelley* in reviewing the facial constitutionality of the rule and special order challenged here. We note also that while the plaintiff's brief refers once to the Massachusetts Constitution as a basis for her claim, it contains no separate discussion of Massachusetts constitutional principles. Accordingly, we review the plaintiff's claim solely on the basis of an alleged violation of Federal constitutional principles. See Mass. R. A. P. 16 (a) (4), as amended, 367 Mass. 919 (1975).

The single circumstance which most clearly directs our consideration of this appeal is that the challenged rule and special order relate to the plaintiff in her official capacity as a government employee. Where the constitutional rights of government employees are at issue, greater infringements have been tolerated than where those of the citizenry in general are involved. See *Pickering* v. *Board of Educ.*, 391 U.S. 563, 568 (1968). For example, the Supreme Court has sustained comprehensive restrictions on First Amendment rights of both Federal and State employees. *Broadrick* v. *Oklahoma*, 413 U.S. 601, 618 (1973). *United States Civil Serv. Comm'n* v. *National Ass'n of Letter Carriers*, 413 U.S. 548, 556 (1973). Similarly, we have found that police officers could be required to answer official questionnaires regarding their private activities, at least where the private activities were "undertaken under a cloak of officialdom." *Broderick* v. *Police Comm'r of Boston*, 368 Mass. 33, 41 (1975), cert. denied sub nom. *Broderick* v. *DiGrazia*, 423 U.S. 1048 (1976). "While government employees do not relinquish their first amendment rights when they enter public service, those rights, unlike the rights of the citizenry-at-large, are subject to the state's paramount interest in promoting the efficiency of the public services it performs through its employees." *Hughes* v. *Whitmer*, 714 F.2d 1407, 1418 (8th Cir. 1983), cert. denied sub nom. *Hughes* v. *Hoffman*, 465 U.S. 1023 (1984). The considerations applicable in assessing the facial constitutionality of the challenged rule and special order are less exacting than if they were applicable to, and challenged by, private citizens.

Restrictions on the Federal constitutional rights of persons who are police officers, at least in so far as the restrictions

relate directly or indirectly to the officers in their official capacities, are permissible. *Kelley* v. *Johnson, supra* at 247. To pass facial constitutional scrutiny they need only be rationally connected, in a nonarbitrary fashion, with the State's interest in fostering public safety by furthering the efficient operation of its police force. *Id. Shawgo* v. *Spradlin,* 701 F.2d 470, 483 (5th Cir.), cert. denied sub nom. *Whisenhunt* v. *Spradlin,* 464 U.S. 965 (1983). *Loughran* v. *Codd,* 432 F. Supp. 259, 263-265 (E.D.N.Y. 1976). *Broderick* v. *Police Comm'r of Boston, supra*. But cf. *Pienta* v. *Schaumburg,* 710 F.2d 1258, 1260 (7th Cir. 1983). While more exacting scrutiny may be brought to a review of a restriction which precludes completely an officer's exercise of her First Amendment rights, or punishes an officer for the substance of her beliefs or expression, see *Connick* v. *Myers,* 461 U.S. 138, 142-149 (1983); *Branti* v. *Finkel,* 445 U.S. 507, 517 (1980); *Perry* v. *Sindermann,* 408 U.S. 593, 597 (1972), no such situation is alleged here. We therefore need consider in this facial challenge to the department's rule and special order only whether they rationally foster the efficient operation and organization of the department.

We conclude that the challenged rule and special order of the department are rationally connected with and foster the State's interests in maintaining an efficient police force to further public safety. Rule 110, § 22(D), and Special Order No. 83-1, do not impose an arbitrary restriction on all movement and exercise of constitutional freedoms by an officer on injured on duty status. Rather, they establish a reasonable system by which the department may monitor the movement and activities of personnel who are receiving full pay while not having to report for active duty. The system promotes reasonableness, and negates arbitrariness, in its provision that permission will not be denied in seven specific, and important, matters. As stressed by the department in its brief and oral argument before this court, Special Order No. 83-1 modifies rule 110, § 22(D), to require only that injured on duty employees notify the department of participation in those activities allowed under it. Although Special Order No. 83-1 could be

.

read to require employees to request permission, which could not be denied, before engaging in the actions permitted under the special order, we accept and hold the department to its representation that the special order only requires notice. It is not constitutionally impermissible to require the plaintiff to inform the department before and after engaging in the activities allowed under Special Order No. 83-1. The department could rationally conclude that such measures would assist in preventing unnecessary absences, and would improve efficiency. The measure may be viewed in light of the fact that, as of the date of trial, 109 patrol officers or detectives out of a force of 1,548 were on sick or injured status for more than thirty days. We recognize the possibility that a facially constitutional scheme may be applied unconstitutionally by its administrators in some circumstances, but the only issue raised in this case is that of facial constitutionality. Reviewing rule 110, § 22(D), and Special Order No. 83-1 for their facial constitutionality, we find they impose no arbitrary restrictions on the plaintiff's constitutional rights, nor do they exceed the department's authority to regulate the conduct of its officers. Accordingly, we agree with the declaration of rights ordered by the judge.

*Judgment affirmed.*