**Donald VOORHEES, Plaintiff,**

v.

**Alfred SHULL, Commissioner of Police of Village of Rockville Centre, and Alfred Shull, Individually, and the Village of Rockville Centre Police Department and the Village of Rockville Centre, Defendants.**

**No. CV 84–4648.**

United States District Court,
E.D. New York.

Oct. 13, 1987.

Leeds & Morelli, Carle Place, N.Y., for plaintiff; Steven A. Morelli, of counsel.

Rivkin, Radler, Dunne & Bayh, Uniondale, N.Y., for defendants; Edward J. Hart, of counsel.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiff Donald Voorhees, a former Village of Rockville Centre police officer, brings this action pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, seeking injunctive and declaratory relief, as well as punitive damages and attorney's fees, for the alleged deprivation of his federal constitutional rights. Voorhees attacks both the facial constitutionality and application of Police Department and Collective Bargaining Rules which require an officer on sick or injured leave to obtain permission from the Police Surgeon, Police Commissioner, supervisory officer, or duty officer before leaving his residence.

Voorhees moves for summary judgment pursuant to Fed.R.Civ.P. 56. Defendants Alfred Shull, Village of Rockville Centre Police Department and Village of Rockville Centre cross-move for summary judgment or, in the alternative, for dismissal of the punitive damages claim against Shull.

## BACKGROUND

The following facts are not in dispute. Voorhees commenced employment as a police officer for the Village of Rockville Centre in January 1969. In February 1982, he injured his back in the course of employment and was placed on injured leave with full pay. As an officer on injured leave, Voorhees was subject to Section 13.8 *et seq.* of the Collective Bargaining Agreement ("CBA") between the Policemen's Benevolent Association of Rockville Centre ("PBA") and the Incorporated Village of Rockville Centre, and to Police Department Memorandum No. 16–83.[1]

---

1. Plaintiff's complaint attacks the constitutionality of Rockville Centre Police Department Rules, Article XVI, Rule H, Subdivision 1, which reads:

... 1. Members of the Department when on sick leave shall not leave their residences, except by written permission of their attending physician. The written consent shall spec-

Section 13.8 *et seq.* of the Agreement provides:

13.8 An employee on sick or injured leave will be required to remain at his place of residence or place of confinement, if such is other than his residence and is approved by the Commissioner of Police, provided, however, that an employee on sick or injured leave who has been determined by the Police Surgeon to be not fit for duty by reason of illness or injury may, upon certification of the Police Surgeon, leave his residence or place of confinement during the time specified by the Police Surgeon.

13.8.1 Between the hours of 9:00 a.m. and 5:00 p.m. on a day he was regularly scheduled to have a tour of duty, and between the hours of 9:00 a.m. and 9:00 p.m. on a day he was regularly scheduled to have a 4:00 p.m. to 12:00 p.m. tour of duty, an employee on sick leave may be visited by a supervising officer.

13.8.2 An employee who has taken sick leave on a regularly scheduled 11:00 p.m. to 7:00 a.m. or a 12 Midnight to 8:00 a.m. tour of duty will be subject to all sick leave restrictions until four hours past the conclusion of his regularly scheduled tour of duty. With the approval of the Police Commissioner, any or all of the provisions of this Section 13.8 may be waived.

To implement the provisions of the CBA, the Police Department of Rockville Centre issued Memorandum No. 16–83, dated October 13, 1983. The pertinent provisions are:

A. *Members duties and responsibilities when reporting on sick or in-*

ify the period such member may leave residence or place of confinement ...
... a. Members receiving permission to leave residence or place of confinement shall produce aforesaid permission or certification whenever required by a superior officer ...
However, Section 15.4 of the Collective Bargaining Agreement ("CBA") between the Village of Rockville Centre and the PBA of Rockville Centre provides:
15.4 In the event that there should be a conflict between any of the provisions of this contract and the rules and regulations of the Police Department, the provisions of this contract shall prevail.

*jured leave, and when returning from sick or injured leave.*

. . . .

5. Remain at residence or place of confinement while on sick or injured leave unless otherwise authorized by the Police Surgeon or the Police Commissioner except that if it is necessary for a member on sick or injured leave to be absent from his residence or place of confinement, he will be required to:
a. Obtain authorization from supervisory officer for absences of up to one (1) hour.
b. Obtain authorization from duty officer for absences from residence of more than one (1) hour duration.
6. Notify Service Desk when leaving residence or place of confinement for purposes of medical treatment while on sick or injured leave.
7. Notify the Police Department of any change in residence or place of confinement while on sick or injured leave.

No guidelines exist for the application of these procedures.

Following Voorhees' placement on injured leave in February, 1982, he and Police Commissioner Shull reached an oral agreement whereby, pursuant to CBA Section 13.8.2, the Commissioner waived the provisions of Section 13.8 which required approval by a Police Department official for an injured police officer to leave home. Under this waiver, Voorhees was free to come and go as he pleased, subject to the limitation that he not engage in activities inappropriate for an officer on injured leave.

Thus, Rule H, Subdivision 1 is superseded by CBA § 13.8 and is irrelevant to this action. The Rockville Centre Police Department issued Memorandum No. 16–83 to implement CBA § 13.8, and it is this Memorandum, not Rule H, which applies. Plaintiff's complaint does not mention Memorandum No. 16–83 and the complaint has never been amended. Later pleadings do, however, refer to the Memorandum, and we will assume for the purposes of this decision that plaintiff seeks a ruling on the applicable regulation, not the one enumerated in the complaint.

On October 11, 1984, Voorhees made an arrest in a nightclub at 3:00 a.m. Voorhees conducted what was later determined to be an improper search of the suspect and the suspect was released. Subsequent to this arrest, on or about November 1, 1984, the waiver of Section 13.8 was revoked and Voorhees was thereafter required to adhere to Memorandum 16–83. The parties disagree about the reasons for the revocation. Commissioner Shull states that he revoked the waiver because Voorhees' presence in a nightclub at 3:00 a.m. showed poor judgment. In Shull's opinion, "by placing himself in the position where a struggle might have ensued causing further injury or aggravation of his present injury [Voorhees] had conducted himself inappropriately," thereby violating the conditions of the oral waiver. (Shull Affidavit, ¶ 11). Voorhees suggests that the revocation was a "disciplinary action" stemming from the impropriety of Voorhees' search of the suspect. (Plaintiff's Affirmation in Opposition to Cross–Motion for Summary Judgment, ¶ 14). Voorhees' complaint pertains only to the period following revocation of the waiver.

Voorhees alleges that because of the enforcement of Memorandum 16–83, he was, from on or about November 1, 1983 until his retirement on March 1, 1985, "confined to his home for every hour of every day, absent the permission of his department to leave his home." (Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, at 1). He further alleges that he was "subjected to frequent harassing and threatening telephone calls, surveillance by police department personnel ... and unannounced visits, so that he virtually could not leave his home without permission of the representatives of the Police Commissioner." (Verified Complaint, ¶ Seventh). The Police Department Rules, Voorhees alleges in his first cause of action, deprive officers on sick or injured leave from the "right to travel, right to religious worship, right of free access, right of free association, right of privacy, right of liberty, freedom to care for their

health and person, freedom from bodily restraint to compulsion and freedom to walk, stroll or loaf, as well as equal protection under the laws of both the United States and the State of New York." (Verified Complaint, ¶ Sixth). His second cause of action alleges an intentional deprivation of Voorhees' rights by Alfred Shull, individually.

In his complaint, Voorhees demands declaratory judgment as to the rules' constitutional validity, injunctive relief from disciplinary proceedings, one million dollars in punitive damages from Alfred Shull individually, and costs, including counsel fees, under § 1988. The injunctive relief is now moot, in light of Voorhees' retirement.[2] Defendants assert that the rules, as written and as applied to Officer Voorhees, do not infringe any constitutionally protected rights, and that Shull in no way violated Voorhees' rights.

## DISCUSSION

### I. *The Summary Judgment Standard*

We set out the general principles governing summary judgment motions. Summary judgment is appropriate where the pleadings, affidavits and other evidence on record indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party has the burden of establishing the absence of a genuine issue of fact. Fed.R.Civ.P. 56(c). *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Katz v. Goodyear Tire & Rubber Co.*, 737 F.2d 238, 244 (2d Cir.1984); *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2d Cir. 1982). That burden includes the presentation by the moving party of such " 'evidence on which, taken by itself, it would be entitled to a directed verdict.' " *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972) (quoting *Radio City Music Hall Corp. v. United States*, 135 F.2d 715, 718 (2d Cir. 1943)).

2. Voorhees was retired by the Police Department in March 1985 because he could not return to regular service and there was no "light duty" work available. (Plaintiff's Affidavit, ¶ 8).

Cross motions for summary judgment, such as the ones before the court, "will not, in themselves, warrant the Court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not in dispute." *United Nuclear Corp. v. Cannon,* 553 F.Supp. 1220, 1224 (D.R.I.1982).

Generally, cases involving constitutional and civil rights questions do not lend themselves to summary disposition. *Transport Limousine v. Port Authority of New York,* 571 F.Supp. 576, 580 (E.D.N.Y.1983); *see also* C. Wright, A. Miller & M.K. Kane, *Federal Practice & Procedure: Civil 2d* § 2732.2 (1983). In this case, however, the claim of facial unconstitutionality does not present issues that would preclude summary disposition. That claim presents the court with a question of law, and the residual factual dispute is irrelevant to the resolution of the facial validity of the rules. *See Venuti v. Riordan,* 521 F.Supp. 1027, 1030 (D.C.Mass.1981).

As to the issues of punitive damages and unconstitutionality of the rules as applied, however, material facts are unresolved, and those issues are unsuitable for summary adjudication. *See, e.g., Losch v. Borough of Parkesburg,* 736 F.2d 903, 909 (3d Cir.1984); *Bush v. Muncy,* 659 F.2d 402, 413 (4th Cir.1981), *cert. denied,* 455 U.S. 910, 102 S.Ct. 1259, 71 L.Ed.2d 449 (1982).

## II. *Facial Constitutionality of the Regulations*

Although the parties' pleadings refer to both § 13.8 of the Collective Bargaining Agreement and police Memorandum No. 16–83, the court limits its ruling on constitutionality to the Memorandum. The Memorandum is based on the above cited provisions in the labor agreement, but it is both unnecessary and undesirable to address the CBA provision, and we decline to do so. Voorhees' claim is against the Police Department of Rockville Centre, the Village and the Police Commissioner, not against the P.B.A. We focus, therefore, on the constitutionality of the Memorandum.

■ The threshold question in determining the validity of municipal regulations is which standard of review to apply. Defendants urge that a rational relationship test be used, while plaintiff requests that this court review the regulations under a strict scrutiny test. Courts have differed in their resolution of this question. *Compare Pienta v. Village of Schaumburg,* 710 F.2d 1258, 1260 (7th Cir.1983) (strict scrutiny) *with Hambsch v. Department of the Treasury,* 796 F.2d 430, 434 (Fed.Cir. 1986) (rational basis); *Serge v. City of Scranton,* 610 F.Supp. 1086, 1087–88 (M.D. Pa.1985) (rational basis); *Philadelphia Lodge No. 5 v. City of Philadelphia,* 599 F.Supp. 254, 257–58 (E.D.Pa.1984) (rational basis), *aff'd,* 779 F.2d 43 (3d Cir.1985); *Loughran v. Codd,* 432 F.Supp. 259, 263 (E.D.N.Y.1976) (rational basis); and *Atterberry v. Police Comm'r,* 392 Mass. 550, 467 N.E.2d 150, 153 (1984), *cert. denied,* 469 U.S. 1208, 105 S.Ct. 1172, 84 L.Ed.2d 322 (1985).

■ When rights specifically protected by the Bill of Rights are curtailed by municipal regulations, strict scrutiny applies, and the municipality must demonstrate a compelling interest to justify their existence. *See Elrod v. Burns,* 427 U.S. 347, 362–63, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). *See also Philadelphia Lodge,* 599 F.Supp. at 257. Voorhees has alleged the violation of such rights. It is crucial to note, however, that the plaintiff brings this suit not as an ordinary citizen, but as an employee of the Rockville Centre Police Department. The Supreme Court has indicated that the State as employer has an interest which differs significantly from its interest in regulating the citizenry in general, and that when a State acts as an employer the courts should evaluate those actions under a more deferential standard than strict scrutiny. *Kelley v. Johnson,* 425 U.S. 238, 245, 96 S.Ct. 1440, 1444–45, 47 L.Ed.2d 708 (1976); *Pickering v. Board of Educ.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 1734, 20 L.Ed.2d 811 (1968); *see also Philadelphia Lodge,* 599 F.Supp. at 257; *Loughran,* 432 F.Supp. at 263.

Plaintiff urges that this court follow the reasoning of *Pienta v. Village of Schaumberg,* 710 F.2d 1258 (7th Cir.1983), but we

decline to do so. The *Pienta* court found that in the Seventh Circuit:

> [I]f a plaintiff's claim is grounded solely in the general liberty language of the due process clause as in *Kelley, supra,* the state need only demonstrate a rational relationship between the regulation and a legitimate state interest. If the public employee challenges limitations on rights specifically protected by other parts of the Constitution, the state must demonstrate that the regulation is necessitated by a compelling state interest and is narrowly tailored to meet that objective.

*Id.* at 1260.

This court has not recognized a similar distinction (and the Second Circuit has not considered the issue). In *Loughran v. Codd,* 432 F.Supp. 259 (E.D.N.Y.1976), the plaintiff, claiming that a compelling state interest test should be used to assess a New York City Police Department sick-leave regulation, tried to distinguish *Kelley.* He argued that in *Kelley,* "only the contours of the fourteenth amendment were implicated ..., and not the more fundamental rights like the one at issue here." *Id.* at 264. The *Loughran* court found that:

> While the Court in *Kelley* did admit that the liberty interest in matters of personal appearance was distinguishable from more fundamental rights such as those of procreation, marriage and family life, the Court did assume for decision purposes that it was a right falling within the protections of the due process clause and announced the "irrational-arbitrary" test accordingly.

*Id.*

Thus, the choice of standard in cases such as this one depends not on the nature of the right involved, but on the character of the challenger, and this "dichotomous use of dual standard[s] of analysis ... is wholly justified by the unique interests surrounding the regulation of a [municipal] employee." *Id.* at 265.

■ The compelling interest standard might be triggered even where the plaintiff is a government employee if the restrictions in question punish the employee for the substance of his beliefs or expression, *see Branti v. Finkel,* 445 U.S. 507, 515–16, 100 S.Ct. 1287, 1293, 63 L.Ed.2d 574 (1980); *Elrod v. Burns,* 427 U.S. 347, 368, 96 S.Ct. 2673, 2687, 49 L.Ed.2d 547 (1976); or preclude completely the employee's exercise of first amendment rights, *see Connick v. Myers,* 461 U.S. 138, 143–48, 103 S.Ct. 1684, 1688–90, 75 L.Ed.2d 708 (1983). Neither situation is alleged here.

■ This court will, then, apply the rational relationship standard. Under this standard, the regulation, to be constitutional, must be rationally connected in a non-arbitrary fashion to the Police Department's interest in fostering public safety by contributing to the efficient operations of the police department. *Kelley,* 425 U.S. at 247–48, 96 S.Ct. at 1445–46, *Hambsch,* 796 F.2d at 434. Certainly, the police department has an important interest in preventing malingering or "gold-bricking" and in expediting the officer's return to work. Some scheme whereby the police department can monitor an officer's activities is necessary and desirable. Defendants assert that the Memorandum provides a mechanism whereby the police department can supervise its members on injured or sick leave, and that "[t]here is a rational relationship between the rules of the Police Department of Rockville Centre and the Police Departments [sic] need for managerial control." (Defendants' Memorandum of Law in Support of Defendants' Cross-Motion for Summary Judgment, at 8).

■ However, even assuming a rational connection to the government's interest, the Memorandum does not automatically pass constitutional muster. It is not enough that there be a rational connection; the restrictive regulation must be rationally connected in a *non-arbitrary* fashion to the state interest. *See Hambsch,* 796 F.2d at 434 (citing *Kelley,* 425 U.S. at 247–48, 96 S.Ct. at 1445–46). At oral argument on the summary judgment motions (September 28, 1987), defendants conceded that there are no guidelines for the application of the Memorandum. Presumably, the determi-

nation to grant or deny permission to engage in any activity rests solely within the discretion of the Police Commissioner, Police Surgeon, supervisory officer or duty officer. Thus, the potential for wholly arbitrary denial of an officer's constitutionally protected rights to vote, go to church, freely associate, etc. exists. The court in *Philadelphia Lodge* found that where no guidelines existed for the issuance of passes for injured officers to leave home, "their issuance ha[d] no rational basis." 599 F.Supp. at 258.[3] In light of the potentially arbitrary application of Memorandum No. 16–83, we hold that it is facially unconstitutional, and we grant partial summary judgment on this claim to the plaintiff.

The court wishes to stress the fact that it is the lack of guidelines which prompts our decision in this matter, and not a belief that the police department's interest in monitoring injured officers' activities is in any way trivial. Such interest is far from trivial. As the court noted in *Loughran v. Codd,*

> Department officials should rightly have available an effective means by which to verify the legitimacy of an officer's disability claim and the necessity for his absence from duty. ... [t]he purpose ... is to ensure that a disabled member performing no duty does not partake in activity that is inconsistent with his status and which might undermine his expeditious return to service.

432 F.Supp. at 263.

To achieve this goal, notification and visitation requirements such as those found in §§ A 6 and 7 of the Police Memorandum and § 13.81 of the CBA may well be necessary. *See Philadelphia Lodge,* 599 F.Supp. at 258–59 (requiring notice when officer goes to vote or to church does not limit his constitutional rights beyond the point necessary to attain state goal); *Atterberry,* 392 Mass. at 556; 467 N.E.2d at 154 (requiring notice can assist in preventing

unnecessary absences and improve efficiency).

The Village of Rockville Centre, through the Police Commissioner, should develop a set of regulations rationally connected to the Village's goal of monitoring its sick and injured officers, including guidelines to ensure their non-arbitrary application.

### III. *Unconstitutionality as Applied to Plaintiff*

In addition to facial unconstitutionality, Voorhees alleges a deprivation of his constitutional rights as a result of the application of police regulations. However, his affidavit states not a single specific instance of deprivation and defendants deny any such deprivation. Further, Voorhees suggests that revocation of the waiver of Memorandum 16–83 amounted to a penalty. Shull denies this in his affidavit. Obviously, issues of material fact exist as to the issue of unconstitutional application of the rules to Voorhees. Where "the party against whom summary judgment is sought comes forth with affidavits or other material ... that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). Here, both parties' affidavits generate uncertainty and the plaintiff's motion and defendants' cross-motion for summary judgment are denied in regard to the issue of unconstitutionality of the rules as applied to Voorhees.

### IV. *Punitive Damages Claim*

We turn now to plaintiff's demand for punitive damages from defendant Shull. Punitive damages are permissible under § 1983 "when the defendant's conduct is shown to be motivated by evil na-

---

**3.** In contrast, the court in *Atterberry* held that the regulation in question "negate[d] arbitrariness" by providing that permission would not be denied "in seven specific and important, matters." 392 Mass. at 556, 467 N.E.2d at 154. The seven "important" matters were (1) scheduled medical appointments; (2) trips to purchase food, medicine and household necessities; (3) church attendance; (4) voting; (5) exercise recommended by an attending physician; (6) answering court subpoenas and (7) reporting to police headquarters when ordered to do so by a superior officer. *Id.* at 552; 467 N.E.2d at 152 n. 4. Defendants might consider this and similar regulations when reformulating Memorandum 16–83.

ture or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Only individual defendants are liable for punitive damages under § 1983; municipalities are immune from such liability. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Punitive damages may be awarded even in the absence of compensatory damages. *See Baltezore v. Concordia Parish Sheriff's Dept.*, 767 F.2d 202, 208 n. 6 (5th Cir.1985), *cert. denied*, 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 790 (1986); *Dykes v. Hosemann*, 743 F.2d 1488, 1500 (11th Cir. 1984), *cert. denied*, —— U.S. ——, 107 S.Ct. 569, 93 L.Ed.2d 574 (1986); *see also Smith*, 461 U.S. at 55, 103 S.Ct. at 1639 n. 1 (quoting *Carlson v. Green*, 446 U.S. 14, 22 n. 9, 100 S.Ct. 1468, 1473 n. 9, 64 L.Ed.2d 15 (1980) ("punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury")).

▆▆ The awarding of punitive damages in a § 1983 action involves several questions of fact.

> The allowance of [punitive] damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact.

*Gordon v. Norman*, 788 F.2d 1194, 1199 (6th Cir.1986). *See also Smith*, 461 U.S. at 56, 103 S.Ct. at 1640; *Dillon v. Coles*, 746 F.2d 998, 100–02 n. 4 (3d Cir.1984).

Plaintiff claims that Shull violated his rights "with a complete utter disregard of the consequences with the intent of using his position to abuse, threaten and harass plaintiff for no legitimate purpose." (Verified Complaint at ¶ 12). However, plaintiff alleges no specific instances of such conduct. Defendant Shull denies any harassment or threats, and any deprivation of

plaintiff's constitutional rights whatsoever. We conclude that a clear dispute exists as to genuine issues of material fact which would preclude summary disposition of this issue as a matter of law.

Defendants' alternative motion for dismissal of the punitive damage claim is also denied. Defendants have offered no legal argument whatsoever in support of this motion and rely, apparently, on their blanket denial of Shull's wrongdoing. This is an insufficient basis for dismissing the claim. Decision on the punitive damages claim is, accordingly, reserved for trial.

The issue of proximate cause in regard to any injuries Voorhees may have suffered must also be submitted to the jury. A finding of facial unconstitutionality does not establish this plaintiff's damages. *Martinez v. California*, 444 U.S. 277, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980) required that in a § 1983 action, the defendant's conduct must have a sufficiently close relationship to the claimed violations of plaintiff's rights in order to conclude that defendant 'subjected' plaintiff 'to the deprivation' of federally protected rights." M. Schwartz & J. Kirklin, *Section 1983 Litigation: Claims, Defenses and Fees* § 4.3 (1986). This has been interpreted as imposing a proximate cause requirement as a requisite for § 1983 liability. *Id.; see also Parrett v. City of Connersville*, 737 F.2d 690, 695 (7th Cir.1984), *cert. dismissed*, 469 U.S. 1145, 105 S.Ct. 828, 83 L.Ed.2d 820 (1985); *Arnold v. International Business Machines*, 637 F.2d 1350, 1355–56 (9th Cir. 1981). Proximate cause normally presents an issue of fact to be determined at trial rather than on the pleadings. *Estate of Bailey v. County of York*, 768 F.2d 503, 511 (3d Cir.1985). Nothing in plaintiff's pleadings changes this general rule, and plaintiff will be required to prove proximate cause at trial.

## V. *§ 1988 Claim for Attorney's Fees*

The court reserves consideration of this claim until the remaining issues in the case have been resolved at trial.

## CONCLUSION

Summary judgment on the single issue of the facial unconstitutionality of Police Memorandum 16–83 is granted to plaintiff Voorhees. Summary judgment for plaintiff on all other counts is denied. Defendants' cross motion for summary judgment and their motion to dismiss the punitive damages claim against defendant Shull are denied.

SO ORDERED.