Anthony URYEVICK, Plaintiff,

v.

Samuel J. ROZZI, Commissioner of Police of the County of Nassau, The Nassau County Police Department, and The County of Nassau, Defendants.

Arthur WICKERS, Plaintiff,

v.

Samuel J. ROZZI, Commissioner of Police of the County of Nassau, The Nassau County Police Department, and The County of Nassau, Defendants.

Nos. CV 88–2060, CV 88–2196.

United States District Court, E.D. New York.

Oct. 1, 1990.

Leeds & Morelli (Eric Dubinsky, of counsel), Carle Place, N.Y., for plaintiffs.

Bee, De Angelis & Eisman (Peter A. Bee, of counsel), Mineola, N.Y., for defendants.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, District Judge.

Plaintiffs, Anthony Uryevick and Arthur Wickers, former police officers of the Nassau County Police Department, bring these consolidated actions pursuant to 42 U.S.C. §§ 1983, 1985 and 1988 against the Police Department, the Commissioner thereof (the "Commissioner") and Nassau County, seeking compensatory and punitive damages for the alleged deprivation of their federal constitutional rights. Plaintiffs attack the constitutionality and application of the Rules and Regulations of the Police Department and Collective Bargaining Agreement which required an officer on sick leave to remain in his residence between the hours of 9:00 a.m. and 5:00 p.m. except when permission to leave home was granted by the Desk Officer, and, which required an officer, upon his designation by the Commissioner as a "sick leave abuser," to remain in his residence for 24 hours a day.

Defendants have moved for judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c), and/or summary judgment, pursuant to Fed.R.Civ.P. 56(b). Plaintiffs have cross-moved for partial summary judgment.

## BACKGROUND

The following facts are either conceded or not in dispute. Plaintiff Uryevick was employed as a police officer with the Nassau County Police Department (the "Police Department") from May 5, 1972 to July 3, 1986. In May 1982, he allegedly injured his back while on duty at the Police Department, and he was thereafter placed on sick leave. Plaintiff Wickers was employed as a police officer from April 16, 1965 to February 21, 1987. In April 1986, he allegedly was injured while on duty, and he was thereafter placed on sick leave.

As officers on sick leave, plaintiffs were subject to Section 8.11–4(E) of the Collective Bargaining Agreement between the defendant County of Nassau and the Patrolmen's Benevolent Association of the Police Department of the County of Nassau, as well as the Police Department's Rule and Regulation Article 7, Rule 6, Subdivision 7(a), 7(b).

Section 8.11–4(E) of the Collective Bargaining Agreement provided:

An employee on sick leave is only required to remain in his/her residence between the hours 9:00 a.m. and 5:00 p.m. on a day he/she was regularly scheduled to have a tour of duty. The employee may be visited by a supervising officer at any time during the hours of 9:00 a.m. and 5:00 p.m. In any event, however, if the Commissioner of Police in his discretion identifies an employee as a sick leave abuser, the employee, upon the per-

sonal direction of the Commissioner of Police, may be required to remain in his/her residence and be visited beyond the hours prescribed above.

In addition, Section 8.11–1 of the Collective Bargaining Agreement provided that "[v]acations, sick leave, and personal leave days shall be granted utilizing the administrative procedures provided in Rules and Regulations of the Police Department." One of these Police Department Regulations was Police Department Rule and Regulation Article 7, Rule 6, Subdivision 7(a), 7(b) ("Regulation 7(a)" and "Regulation 7(b)") which provided:

7. Confinement While on Sick Leave

a. Members of the Department, while on sick leave, shall not leave their place of residence or confinement during the hours of 0900 to 1700 on a regularly scheduled work day, except when permission is granted. Whenever a member who is on sick leave requests permission to leave the place of residence or confinement, either to report to the Surgeon or to report to the Command for the purpose of returning to duty or for a personal emergency, the member shall contact the Desk Officer of the Precinct of residence who, after ascertaining the identity and present location of the member, the place the member wishes to visit, the reason why it is necessary for the member to leave the place of residence or confinement, and the estimated time the member will be away from the place of residence or confinement, shall determine whether the request is for a reasonable purpose and time. If and when approval is granted, the Desk Officer shall cause an appropriate entry to be made in the Blotter and on PDCN Form 200. Upon the member's return to the place of residence or confinement, the member shall notify the Desk Officer of the Precinct of residence, who again shall cause an appropriate entry to be made in the Blotter and on PDCN Form 200. All other requests by a member to leave the place of residence or confinement shall be submitted, in writing, to the Police Surgeon. When such approval is given by the Police Surgeon, the Chief Surgeon's Office shall promptly notify the Desk Officer of the member's Precinct of residence of this fact, and said Desk Officer shall cause appropriate entries to be made in the Blotter and on PDCN Form 200.

b. A member of the Department identified by the Commissioner of Police as a sick leave abuser, upon the personal direction of the Commissioner of Police, shall be required to remain in his residence and be visited beyond the hours prescribed in Article 7, Rule 6, subdivision 7a.

There were no written guidelines for the application of these procedures.

The Commissioner designated Uryevick a "sick leave abuser" on February 1, 1982, and so designated Wickers on February 25, 1983, such designations remaining in effect until plaintiffs were approved for Accident Disability Retirement and retired as such. Because of the Commissioner's designation of plaintiffs as sick leave abusers, plaintiffs were required to remain in their residences for 24 hours a day on their regularly scheduled tour of duty days, absent permission from the Police Department's to leave, were visited by members of the Police Department up to four times a day during those days, and were visited on their days off as well.[1]

Plaintiffs allege that, as a result of Section 8.11–4(E), Regulations 7(a) and 7(b), and the Commissioner's designation of plaintiffs as sick leave abusers, each plaintiff was

made a virtual prisoner in his home, deprived of his personal, individual liberty by the defendants in that he has been

---

1. Defendants state that it was the practice of the Police Department not to visit beyond the hours of 9:00 a.m. to 10:00 p.m. (Defendants' affirmation in opposition to plaintiffs' Rule 3(g) Statement, ¶ Fourth), and that no official rules required plaintiffs to remain in their residences on any day which would not otherwise have been a workday. (Defendants' affirmation pursuant to Rule 3(g), ¶ Eighth).

subjected to frequent harassing and threatening telephone calls, surveillance by police department personnel both inside and outside his home, unannounced visits by representatives of the police department so that he was virtually unable to leave his home without permission of the representatives of the police department.

(Uryevick Verified Complaint, ¶ 32; Wickers Verified Complaint, ¶ Nineteenth).

The rules and regulations of the Police Department, plaintiffs allege in their first cause of action, prevented each from

practicing his religion, exercising his right to vote, associating with family and friends; limited his right to attend political meetings, to consult with his attorneys, and to travel. Such abridgements are in direct violation of the Constitution of the United States, the First Amendment thereof, and the Civil Rights Statutes of the United States and the State of New York.

(Wickers Verified Complaint, ¶ Twenty-fourth. *See* Uryevick Verified Complaint, ¶ 34).

Their second cause of action alleges the illegal deprivation of plaintiffs' right to be employed and lost benefits associated with employment, resulting from lack of overtime pay compensating for the additional time plaintiffs were required to remain at home pursuant to the Police Department's Regulations. Their third cause of action alleges defendants' harassment and intentional infliction of emotional distress.

In this complaint, plaintiffs seek compensatory and punitive damages. Defendants assert that they have not violated plaintiffs' constitutionally protected rights and that punitive damages are not available against the Police Department or Nassau County.

## DISCUSSION

We set out the general principles governing summary judgment motions. Summary judgment is proper when no material questions of fact remain to be decided by the factfinder; the movant bears the initial burden of establishing the absence of any genuine issues of material fact. Fed.R. Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). The nonmovant's evidence is to be believed, and all ambiguities and justifiable inferences to be drawn from the underlying facts should be resolved in favor of the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986); *Thompson*, 896 F.2d at 720.

When the nonmovant bears the burden of proof on an issue, the movant can discharge the burden imposed by Rule 56(c) by showing that there is no proof to support the nonmovant's case. *Celotex*, 477 U.S. at 325, 106 S.Ct. at 2554. If the movant is able to do this, the burden shifts to the nonmovant, who must produce some evidence which shows that a genuine issue of material fact remains to be decided. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

Cross motions for summary judgment, such as the ones before the court, will not, in themselves, require that the court grant judgment as a matter of law for one side or the other. *Eastman Mach. Co. v. United States*, 841 F.2d 469, 473 (2d Cir.1988). "[N]either motion may be granted unless one party is entitled to it as a matter of law upon genuinely undisputed facts." *Rhoads v. McFerran*, 517 F.2d 66, 67 (2d Cir.1975).

Generally, cases involving constitutional and civil rights questions do not lend themselves to summary disposition. *Voorhees v. Shull*, 686 F.Supp. 389, 393 (E.D.N.Y. 1987). *See also* C. Wright, A. Miller & M.K. Kane, *Federal Practice & Procedure: Civil 2d* § 2732.2 (1983). In this case, however, the question whether the Police Department regulations are facially unconstitutional does not present issues that would preclude summary disposition. That question presents the court with a question of law. *IDK, Inc. v. Clark County*, 836 F.2d 1185, 1189 (9th Cir.1988) (challenge to statute that it is facially unconstitutional involves questions on which summary judgment is often appropriate) (citing *Heffron*

v. *Int'l Soc'y for Krishna Consciousness*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981)); *Voorhees*, 686 F.Supp. at 393.

### Facial Constitutionality of the Rules

■ The threshold question in determining the constitutionality of a state or municipal rule or regulation governing the conduct of its employees is what standard of judicial scrutiny to apply. Usually, when rights specifically protected by the Bill of Rights are curtailed by municipal regulations, "strict scrutiny" applies, and the municipality must demonstrate a compelling interest to justify their existence, and that the regulation is narrowly tailored to meet that interest. *Elrod v. Burns*, 427 U.S. 347, 362–63, 96 S.Ct. 2673, 2684, 49 L.Ed.2d 547 (1976). However, the Supreme Court has indicated that the state as employer has an interest which differs significantly from its interests in regulating the citizenry in general, and that when the state acts as an employer the courts should evaluate its actions under the more deferential "rational relationship" standard. *Kelley v. Johnson*, 425 U.S. 238, 245, 96 S.Ct. 1440, 1444–45, 47 L.Ed.2d 708 (1976); *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568, 88 S.Ct. 1731, 1734–35, 20 L.Ed.2d 811 (1968). *See also Philadelphia Lodge No. 5 v. City of Philadelphia*, 599 F.Supp. 254, 257 (E.D.Pa.1984), *aff'd*, 779 F.2d 43 (3d Cir.1985); *Voorhees*, 686 F.Supp. at 393.

Courts that have addressed the constitutionality of regulations similar to the one in the instant case have applied the rational relationship standard. *Hambsch v. Dep't of Treasury*, 796 F.2d 430, 434 (Fed.Cir. 1986) (regulation limiting right of secret service members to travel outside Washington); *Philadelphia Lodge No. 5 v. City of Philadelphia*, 599 F.Supp. 254, 257–58 (E.D.Pa.1984) (police officer sick leave regulations), *aff'd*, 779 F.2d 43 (3d Cir.1985); *Voorhees v. Shull*, 686 F.Supp. 389, 393–94 (E.D.N.Y.1987) (same); *Korenyi v. Dep't of Sanitation of City of New York*, 699 F.Supp. 388, 395 (E.D.N.Y.1988) (sanitation worker sick leave regulations); *Serge v.*

*City of Scranton*, 610 F.Supp. 1086, 1087–88 (M.D.Pa.1985) (same).[2] Under the rational relationship test, the regulation, to be constitutional, "must be rationally connected in a non-arbitrary fashion to the [Police Department's] interest in fostering public safety by contributing to the efficient operations of the [Police Department]." *Hambsch*, 796 F.2d at 434 (citing *Kelley*, 425 U.S. at 247–48, 96 S.Ct. at 1445–46); *Voorhees*, 686 F.Supp. at 394.

■ In *Voorhees*, a case almost identical to the instant case, a police officer alleged that the city's sick leave regulation requiring that an officer on sick leave remain at his residence between 9:00 a.m. and 5:00 p.m., absent permission to leave from the Police Commissioner or another authorized individual, was facially unconstitutional and unconstitutionally deprived the officer, *inter alia*, of his constitutional rights to travel, religious worship and free association.

Applying the rational relationship test, the court in *Voorhees* found that:

> the police department has an important interest in preventing malingering or "goldbricking" and in expediting the officer's return to work. Some scheme whereby the police department can monitor an officer's activities is necessary and desirable. . . .

> However, even assuming a rational connection to the government's interest, [the regulation] does not automatically pass constitutional muster. It is not enough that there be a rational connection; the restrictive regulation must be rationally connected in a *non-arbitrary* fashion to the state interest. *See Hambsch*, 796 F.2d at 434 (citing *Kelley*, 425 U.S. at 247–48, 96 S.Ct. at 1445–46).

*Voorhees*, 686 F.Supp. at 394 (emphasis in original). Because there were no guidelines for the application of the regulation, the court concluded that the regulation was

---

2. *But see Pienta v. Village of Schaumburg*, 710 F.2d 1258, 1260 (7th Cir.1983) (strict scrutiny applies to claim that sick leave regulation violates rights specifically protected by the Consti- tution, and rational relationship test applies when claim is grounded solely in the general liberty language of the due process clause).

not rationally related in a *non-arbitrary* way to the government's interest:

> [D]efendants conceded that there are no guidelines for the application of the [regulation]. Presumably, the determination to grant or deny permission to [leave home] rests solely within the discretion of the Police Commissioner, Police Surgeon, supervisory officer or duty officer. Thus, the potential for wholly arbitrary denial of an officer's constitutionally protected rights to vote, go to church, freely associate, etc. exists. The court in *Philadelphia Lodge* found that where no guidelines existed for the issuance of passes for injured officers to leave home, "their issuance ha[d] no rational basis." 599 F.Supp. at 258. In light of the potentially arbitrary application of [the regulation], we hold that it is facially unconstitutional, and we grant partial summary judgment on this claim to the plaintiff.

*Id.* at 394–95 (footnote omitted).

Similarly, in the instant case, Regulation 7(a) did not contain any written guidelines governing the Desk Officer's determination of whether a request to leave home is for a "reasonable purpose and time." Regulation 7(a). Although the regulation specifies the information the officer on sick leave must furnish to the Desk Officer for the latter to make his determination, there were no guidelines for the Desk Officer's determination of what is "reasonable." Defendants concede there were no written guidelines for this determination, but essentially assert that "reasonable purpose" is itself a "promulgated standard." (Defendants' Memorandum of Law, at 10). According to defendants, a "rule of reason" was to apply to requests to leave residence. (Affidavit of Detective Kiesel in Opposition to Plaintiffs' Cross–Motion, ¶ Seventh). However, a "rule of reason," without clear guidelines, allows "the potential for wholly arbitrary denial of an officer's constitutionally protected rights to vote, go to church, freely associate, etc." *Voorhees*, 686 F.Supp. at 395. Indeed, defendants concede that the Police Department subsequently enacted a set of guidelines "to clarify the circumstances under which permission was to be given to leave residence.[3] (Kiesel Affidavit, ¶ Seventh).

Although defendants attempt to distinguish *Voorhees*, the instant case presents an even *more* compelling case for finding

---

**3.** By Order 19, dated April 15, 1988, defendant Police Commissioner amended Regulation 7(a) to read:

Confinement While on Sick Leave

a. Members of the Department, while on sick leave, shall not leave their place of residence or confinement during the hours of 0900 to 1700 on a regularly scheduled work day, without first obtaining permission to do so. Whenever a member who is on sick leave requests permission to leave the place of residence or confinement, either to report to the Surgeon or to the Command for the purpose of returning to duty, or for a personal emergency, the member shall contact the Desk Officer of the Precinct of residence who, after ascertaining the identity and present location of the member, the place the member wishes to visit, the reason why it is necessary for the member to leave the place of residence or confinement, and the estimated time the member will be away from the place of residence or confinement, shall determine whether the request is for a reasonable purpose and time. *Such can be defined as any verifiable purpose or personal emergency request for which a reasonable person would expect to receive an affirmative reply. Examples include, but are not limited to, attending religious services, exercising elective franchise, emergencies involving immediate family members, purchase or replacement of prescribed medication, doctors visits, special family occasions such as weddings and graduations, and deaths not covered by these Rules and Regulations. When questionable circumstances arise, Desk Officers may contact the Medical Administration Office for further clarification and guidance.* If and when approval is granted, the Desk Officer shall cause an appropriate entry to be made in the Blotter and on PDCN Form 200. Upon the member's return to the place of residence or confinement, the member shall notify the Desk Officer of the Precinct of residence, who again shall cause an appropriate entry to be made in the Blotter and on PDCN Form 200. All other requests by a member to leave the place of residence or confinement shall be submitted, in writing, to the Police Surgeon. When such approval is given by the Police Surgeon, the Chief Surgeon's Office shall promptly notify the Desk Officer of the member's Precinct of residence of this fact, and said Desk Officer shall cause appropriate entries to be made in the Blotter and on PDCN Form 200.

(emphasis denotes the additions to the Regulation). We do not pass upon the constitutionality of the Regulation 7(a) as amended.

the Regulation to be unconstitutional. First, in *Voorhees*, officers on sick leave were confined to their residence from 9:00 a.m. to 5:00 p.m. on their regularly scheduled tour of duty days, unless permission to leave home was granted. In the instant case, as a consequence of the Police Commissioner's designation of plaintiffs as "sick leave abusers," plaintiffs were confined to their residences for *twenty-four hours a day* on their regularly scheduled tour of duty days, unless the Desk Officer granted a "reasonable purpose" to leave home. Thus, the period of confinement over which the Desk Officer exercised his discretion to grant leave, and the potential for wholly arbitrary denial of the sick leave officer's constitutionally protected rights, is substantially greater in the instant case.

Second, the Police Commissioner's subsidiary determination, pursuant to Regulation 7(b), that an officer on sick leave is a "sick leave abuser," is also devoid of any guidelines. During deposition testimony of defendants, Detective Kiesel conceded that the Police Commissioner had no clear guidelines in his designation that an officer is a "sick leave abuser" and must be confined to his home twenty-four hours a day on regularly scheduled tour of duty days:

> Q. I believe in that Notice, I requested whoever was coming down here helping Nassau County Police Department to have some sort of documentation that would define what a sick leave abuser is.
>
> A. There is no such documentation, nothing in writing.
>
> Q. Is that to the best of your knowledge, or have you spoken to other individuals in the Nassau County Police Department regarding this?
>
> A. I also spoke with the Commissioner. I know there is nothing in writing as to specifically what constitutes a sick leave abuser. There is no absolute

formula that you can say it fits in this box.

> Q. Has the Nassau County Police Department ever defined what a sick leave abuser is, and the description of what a sick leave abuser is?
>
> Ms. Capitolo: In written form?
>
> Mr. Dubinsky: Yes.
>
> A. Not to my knowledge, no.

(Kiesel Deposition, at 25–26) (quoted from Plaintiff's Memorandum of Law, at 8–9).[4] Thus, not only is the Desk Officer's "reasonable purpose" determination, pursuant to Regulation 7(a), devoid of any guidelines, but the Police Commissioner's "sick leave abuser" designation, pursuant to Regulation 7(b), is as well.

The thrust of defendants' position is that they did not deprive plaintiffs of their constitutional rights, and that *Voorhees* is distinguishable, because Regulations 7(a) and 7(b) are incorporated into plaintiffs' Collective Bargaining Agreement through Section 8.11–1 of that agreement,[5] the complaints are framed in terms of contract (rather than tort), and therefore the sick leave requirements are merely part of the *quid pro quo* of plaintiffs' contract.

■ In *Voorhees*, the court declined to address the issue of the constitutionality of the sick leave provision in the Collective Bargaining Agreement, for it was both unnecessary and undesirable; Voorhees' claim was against the Police Department, not his union. *Voorhees*, 686 F.Supp. at 393. Similarly, in the instant case, plaintiffs' claim is not against the union, so we need not address the constitutionality of Section 8.11–4(E) of the Collective Bargaining Agreement. Furthermore, that Regulations 7(a) and 7(b) are incorporated into the Collective Bargaining Agreement by Section 8.11–1 of that agreement, and are therefore part of plaintiffs' "bargain" in

---

**4.** Kiesel's Affidavit in Opposition to Plaintiffs' Cross–Motion, describing the procedures for the Medical Administration Officer's recommendation that an officer be designated a sick leave abuser, is not to the contrary. "After review of the recommendation, the Commissioner *may* designate the police officer as a 'sick leave abuser.'" Kiesel Affidavit, ¶ Fourth (emphasis add-

ed). The designation of "sick leave abuser" is still within the virtually unfettered discretion of the Police Commissioner and is devoid of any discernable guidelines.

**5.** Section 8.11–1 of the Collective Bargaining Agreement is quoted above.

working for the County, is already accounted for by the lowered level of judicial scrutiny with which we examine the constitutionality of the Regulations. As discussed above, if plaintiffs were suing as ordinary citizens being subject to the Regulations, and not as (former) employees of the Police Department, the Regulations would be subject to strict scrutiny and would almost certainly fail. However, since plaintiffs were subject to the Regulations by virtue of their status as county employees, the much more deferential "rationally related" standard of scrutiny applies. That the state Regulation governed the conduct of state employees already weighs the scale in favor of upholding the constitutionality of the Regulation; incorporation of the Regulation into the employee's contract does not change the analysis or the result. An otherwise facially unconstitutional state regulation is not saved by the incorporation of that regulation into the employee's formal contract with the government.[6]

Because Regulations 7(a) and 7(b) did not contain guidelines for the application of the procedures therein (specifically, the determination of "reasonable purpose" and the designation of a "sick leave abuser"), we hold that the Regulations were facially unconstitutional.

The court wishes to stress, as we did in *Voorhees*, 686 F.Supp. at 395, that it is the lack of guidelines which prompts our decision in this matter, and not a belief that the Police Department's interest in monitoring injured officers' activities is in any way trivial. Such interest is far from trivial. As the court noted in *Loughran v. Codd*, 432 F.Supp. 259, 263 (E.D.N.Y.1976):

> Department official should rightly have available an effective means by which to verify the legitimacy of an officer's disability claim and the necessity for his absence from duty.... [T]he purpose ... is to ensure that a disabled member performing no duty does not partake in

activity that is inconsistent with his status and which might undermine his expeditious return to service. ˙

The County of Nassau, through the Police Commissioner and the Police Department, should develop a set of regulations rationally connected to the County's legitimate goal of monitoring its sick and injured officers, including guidelines to ensure their non-arbitrary application.

## Unconstitutionality as Applied to Plaintiffs

■ Although we have found Regulations 7(a) and 7(b) to be facially unconstitutional, plaintiffs allege a deprivation of their constitutional rights, and damages, as a result of the *application* of the regulations to them. Plaintiffs' affidavits state not a single specific instance of deprivation and defendants deny any such deprivation. Issues of material fact obviously exist as to the question of unconstitutional application of the Regulations to plaintiffs. Where "the party against whom summary judgment is sought comes forth with affidavits or other material ... that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate." *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir.1980). Here, both parties' affidavits generate uncertainty as to material facts and defendants' motion and plaintiffs' cross-motion for summary judgment are therefore denied in regard to the issue of the unconstitutionality of the Regulations as applied to plaintiffs.

## Punitive Damages Claim

Plaintiffs have demanded punitive damages from defendants Police Commissioner, Police Department, and the County. Punitive damages are permissible under Section 1983 "when the defendant's conduct is shown to be motivated by evil nature of intent, or when it involves reckless or cal-

---

**6.** We reiterate that the court does not address the constitutionality of the Collective Bargaining Agreement sick leave provision. Similarly, we also do not address the situation where the rule in question governing the employee's conduct is contained *only* in the Collective Bargain-

ing Agreement are not in the rules or practices promulgated by the government. We merely find that an otherwise facially unconstitutional state regulation is not saved by the incorporation of that regulation into the employee's formal contract with the government.

lous indifference to the federally protected rights of others." *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). Punitive damages may be awarded even in the absence of compensatory damages. *Baltezore v. Concordia Parish Sheriff's Dep't,* 767 F.2d 202, 208 (5th Cir.1985), *cert. denied,* 474 U.S. 1065, 106 S.Ct. 817, 88 L.Ed.2d 790 (1986); *Dykes v. Hosemann,* 743 F.2d 1488, 1500 (11th Cir.1984), *cert. denied,* 479 U.S. 983, 107 S.Ct. 569, 93 L.Ed.2d 574 (1986). *See Smith v. Wade,* 461 U.S. 30, 55 n. 21, 103 S.Ct. 1625, 1639 n. 21, 75 L.Ed.2d 632 (1983) ("punitive damages may be the only significant remedy available in some § 1983 actions where constitutional rights are maliciously violated but the victim cannot prove compensable injury").

■ However, only individual defendants are liable for punitive damages under Section 1983; municipalities are immune from such liability. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). Accordingly, plaintiffs' claim for punitive damages against defendants Nassau County Police Department and County of Nassau are dismissed.[7] Plaintiffs' punitive damages claim against the individual defendant, Samuel J. Rozzi (the Police Commissioner), however, is not dismissed because issues of material fact exist.

■ The awarding of punitive damages in a Section 1983 action involves several questions of fact:

> The allowance of such damages involves an evaluation of the nature of the conduct in question, the wisdom of some form of pecuniary punishment, and the advisability of a deterrent. Therefore, the infliction of such damages, and the amount thereof when inflicted, are of necessity within the discretion of the trier of fact.

*Gordon v. Norman,* 788 F.2d 1194, 1199 (6th Cir.1986). *See Smith,* 461 U.S. at 56, 103 S.Ct. at 1640; *Dillon v. Coles,* 746 F.2d 998, 1002 (3d Cir.1984). Plaintiffs claim

that defendants' (including Rozzi) actions were "malicious," "intentional," and "intended to embarrass and disrupt" plaintiffs' lives. (Uryevick Verified Complaint, ¶ 44; Wickers Verified Complaint, ¶ Thirty-fourth). However, plaintiffs allege no specific instances of such conduct. Defendant Rozzi denies that any such conduct occurred, and that plaintiffs' constitutional rights were deprived of whatsoever. We conclude that a clear dispute exists as to genuine issues of material fact which would preclude summary judgment of this issue as a matter of law.

■ In addition, the issue of proximate cause regarding injury plaintiffs may have suffered must also be submitted to the jury. A finding of facial unconstitutionality does not establish these plaintiffs' damages. The injury must not be "too remote a consequence of the [state] action to hold [it] responsible under the federal civil rights laws." *Martinez v. Cal.,* 444 U.S. 277, 285, 100 S.Ct. 553, 559, 62 L.Ed.2d 481 (1980). This imposes a proximate cause requirement as a prerequisite for Section 1983 liability. *Brower v. County of Inyo,* 489 U.S. 593, 599, 109 S.Ct. 1378, 1382–83, 103 L.Ed.2d 628 (1989). Proximate cause normally presents an issue of fact to be determined at trial rather than on summary disposition. *Estate of Bailey v. County of York,* 768 F.2d 503, 511 (3d Cir.1985); *Voorhees,* 686 F.Supp. at 396. Nothing in plaintiffs' and defendants' pleadings and moving papers changes this general rule, and plaintiffs will be required to prove proximate cause at trial.

## CONCLUSION

Summary judgment on the single issue of the facial unconstitutionality of Regulations 7(a) and 7(b) is granted to plaintiffs. Summary judgment for plaintiffs is in all other respects denied. Plaintiffs' claims for punitive damages against defendants Nassau County Police Department and County of Nassau are dismissed. Defen-

---

7. Although plaintiffs, in their complaints, claimed punitive damages against the Police Department and the County, they now concede that those entities are immune from such liability. (Plaintiffs' Memorandum of Law, at 14).

dants' summary judgment motion is in all other respects denied.

SO ORDERED.