Daniel MONAHAN, et al., Plaintiffs,

v.

**CITY OF NEW YORK DEPARTMENT OF CORRECTION, The City of New York, Michael Jacobson, Acting Commissioner, City of New York Department of Correction, Terance Skinner, Deputy Warden and Commanding Officer of the Health Management Division of the City of New York Department of Correction, and _____ Johnson, Supervisor Civilian (ID No.25835), et al., Defendants.**

Nos. 96 Civ. 2287(JSR), 96 Civ. 3733(JSR), 96 Civ. 4224(JSR), 96 Civ. 7107(JSR), 96 Civ. 7108(JSR), 96 Civ. 8016(JSR), 96 Civ. 8140(JSR), 96 Civ. 9395(JSR), 96 Civ. 9719(JSR), 97 Civ. 0020(JSR), 97 Civ. 0649(JSR) and 97 Civ. 1670(JSR).

United States District Court, S.D. New York.

July 7, 1998.

Leeds & Morelli, Carle Place, New York City, (Fredric Ostrove, of counsel), for plaintiff.

Jeffrey D. Friedlander, Acting Corp. Counsel of the City of New York (John Wirenius, of counsel), for defendant.

## OPINION AND ORDER

RAKOFF, District Judge.

The plaintiffs in these twelve consolidated cases are current and former New York City correction officers who belonged at all relevant times to the Correction Officers' Benevolent Association ("COBA"), the exclusive bargaining agent for New York City correction officers. In 1995, their representative, Norman Seabrook, in his capacity as president of COBA, brought suit against the City of New York and related defendants challenging the constitutionality of the City's sick leave policy applicable to correction officers. *See Seabrook v. Jacobson,* No. 95 Civ. 4194(FB) (E.D.N.Y., Compl. dated Oct. 13, 1995) (the *"Seabrook"* action). That policy, as embodied in Department of Correction Directive 2262, permitted unlimited sick leave for up to a full year provided a correction officer on sick leave generally remained at home. While the City believed that the stay-at-home requirement was necessary to prevent its otherwise liberal leave policy from degenerating into an open invitation to fraud, the correction officers, as represented by Seabrook, argued that it deprived the officers of a wide variety of substantive and procedural rights guaranteed to them by the United States Constitution.

In April 1996, the *Seabrook* action was settled, pursuant to which an order was entered in federal court dismissing Seabrook's claims with prejudice. *See* Declaration of John F. Wirenius, dated November 20, 1997, Ex. E. Under the settlement, Directive 2262 was amended in numerous material respects. Among other things, correction officers on sick leave (with certain limited exceptions known as "sick leave abusers") were no longer required to remain in their residences during their first eight sick days in a given calendar year; officers injured in the line of duty who were scheduled to return to work within two weeks of the injury were not required to remain in their residences at all; officers injured on duty but without a specific return date could apply to the Health Management Division for permission not to be confined to their residences during some or all of their period of leave; and all other officers on sick leave were permitted to leave their residences at any time for medical appointments and for an additional uninterrupted period of up to four hours per day for any other purpose whatever ("recreational time"). While officers in the latter category had to select which of two four-hour time slots (one in the morning, one in the evening) they would utilize for such recreational time (so as to enable Department of Corrections "home visit captains" to check on them), they could change the selection every 30 days.

The ink was hardly dry on this settlement when plaintiffs commenced the instant actions, challenging the amended Directive as facially violative of the First, Fourth, Fifth and Fourteenth Amendments of the Constitution and further contending that, in any event, the Directive has been unconstitution-

ally applied to them individually.[1] In effect they seek a third bite at the proverbial apple, since the sick leave policy challenged in the *Seabrook* action was itself the result of collective bargaining. The Court concludes, however, that they may no longer feed on this fruit, since as explained below, their claims are not only barred by principles of res judicata but also are both legally and factually deficient. Accordingly, defendants' pending motion for summary judgment must be granted and plaintiffs' claims dismissed.

 As noted, plaintiffs' first claim is that the sick leave policy arising from the *Seabrook* settlement, as embodied in amended Directive 2262, is unconstitutional on its face. To begin with, this claim is barred by the doctrine of res judicata. While it is true that defendants previously failed to plead this affirmative defense in all but two of the instant actions [2] and did not seek to amend the other pleadings to include this defense until filing for summary judgment, "absent prejudice to the plaintiff, a defendant may raise an affirmative defense in a motion for summary judgment for the first time." *Steinberg v. Columbia Pictures Industries, Inc.*, 663 F.Supp. 706, 715 (S.D.N.Y.1987) (quoting *Rivera v. Anaya*, 726 F.2d 564, 566 (9th Cir.1984)); *see also Block v. First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir.1993); *Devito v. Pension Plan of Local 819 I.B.T. Pension Fund*, 975 F.Supp. 258, 263 (S.D.N.Y.1997); *United States v. Krieger*, 773 F.Supp. 580, 583 (S.D.N.Y.1991). Although plaintiffs allege prejudice, chiefly in having to expend substantial time and effort on discovery that they claim would have been improvident if they had known their claims were subject to being barred by res judicata, it is settled that "the time, effort and money ... expended in litigating" a matter does not constitute "prejudice" for this purpose. *Block*, 988 F.2d at 351. Moreover, substantially the only discovery taken by plaintiffs over the entirety of these 12 cases consisted of deposing two witnesses. (Defendants, for their part, simply deposed the various plaintiffs.) This hardly constitutes material prejudice.

 Nor, upon careful inspection of the record, do plaintiffs' other claims of prejudice find meaningful support. Conversely, even if plaintiffs' claims of prejudice were more colorable than they in fact are, on no analysis are they sufficiently substantial to overcome the "strong public policy in economizing the use of judicial resources" that, in appropriate cases, even warrants a court in raising the defense of res judicata *sua sponte*. *Doe v. Pfrommer*, 148 F.3d 73, 79–80 (2d Cir.1998); *see also Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir.1993). Accordingly, defendants' application for leave to amend their answers in the other ten actions to assert the res judicata defense already raised in *Almodovar* and *Ball* is hereby granted.

 Once raised, res judicata fully disposes of plaintiffs' claim of facial unconstitutionality. "Res judicata assures the finality of judgments by precluding a party to a lawsuit from litigating a claim more than once." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir.1995). "Res judicata may also preclude claims by parties who were not involved in the earlier lawsuit ... when the precluded party's interests [were] represented" in that lawsuit. *Id.* The doctrine takes effect when (1) there exists an adjudication on the merits in a prior lawsuit, (2) the prior lawsuit involved the party to be precluded or a party in privity with that party, and (3) the claims sought to be precluded were raised, or might reasonably have been raised, in the prior lawsuit. *See id.*

All three of these requirements are met here. The voluntary dismissal of the *Seabrook* claims with prejudice constitutes an adjudication on the merits. *See Chase Man-*

---

1. Some plaintiffs also allege that defendants engaged in a conspiracy to deprive them of equal protection and of their privileges and immunities, in violation of 42 U.S.C. § 1985(3). One plaintiff, Lorde, also alleges discrimination on the grounds of disability in violation of state (but not federal) law.

2. However, in those two actions, *Almodovar* and *Ball* (involving 30 of the 40 plaintiffs), the answers embodying the res judicata defense, though otherwise untimely, were filed with plaintiffs' consent shortly before service of defendants' summary judgment motion.

*hattan,* 56 F.3d at 345. Privity is established because the plaintiff in the *Seabrook* case brought that action "in his capacity as President" of the union that represented all of the instant plaintiffs in connection with the very issues here raised: he and they were thus in privity as a formal matter, as a practical matter, and as a matter of the identity of interests between those involved in *Seabrook* and those involved in the instant actions. *See id.; see also Nash v. Bowen,* 869 F.2d 675, 679 (2d Cir.1989) (judgment rendered against an association may serve as res judicata with respect to claims later asserted by members of that association). Finally, as to identity of claims, res judicata bars not only the instant claims under the First and Fourteenth Amendment (alleging violation of plaintiffs' rights to freely associate, vote, practice religion and exercise freedom of speech), which were expressly raised in *Seabrook,* but also the closely-related Fourth and Fifth Amendment claims (alleging that home confinement constituted an unreasonable search and seizure and violated plaintiffs' rights to privacy and due process), which reasonably could have been raised in the earlier proceeding. *See id.*

■ Accordingly, for the foregoing reasons, all of plaintiffs' claims of facial unconstitutionality are barred by res judicata and must be dismissed on that ground. Separately and independently, for the reasons that follow, they must also be dismissed on the independent ground that they cannot survive summary judgment on the merits.

■ Challenges to the facial constitutionality of regulations such as amended Directive 2262 are assessed under the "rational basis" test. Specifically, because of the multitude of legitimate interests that a government has in regulating conduct of its own agents and employees, the facial constitutionality of municipal regulations relating to municipal employees is usually satisfied if the municipal government can show a rational relationship between the challenged regulation and the state interest it is claimed to foster. *See Kelley v. Johnson,* 425 U.S. 238, 245, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976); *Pickering v. Board of Education,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). While there may be unusual situations where a regulation's potential chilling effect on the exercise of a constitutional right may require strict scrutiny of even a facial challenge, *see, e.g., Burson v. Freeman,* 504 U.S. 191, 198, 112 S.Ct. 1846, 119 L.Ed.2d 5 (1992), no such situation is here presented.[3]

To meet the "rational basis" standard, defendants have provided unrebutted evidence that the modified home confinement aspects of Directive 2262 here challenged rationally serve the legitimate state interests of verifying officers' illnesses and preventing malingering. *See, e.g.,* Affidavit of Terrence Skinner, dated November 20, 1997, at 8–10, 16–18. As defendants' evidence shows, it is perfectly rational for a state employer, as part of a negotiated bargain by which it agrees to compensate for up to a full year an employee who professes to be too sick to even come to work, to condition such payment on the employee's effectively establishing the truth of his professions by remaining at home for most (but far from all) of the day unless he is sufficiently well to have already scheduled a return to work.

■ In response, plaintiffs, for all the myriad claims of facial unconstitutionality alleged in their Complaint, are reduced to arguing on this motion that the modified home confinement policies set forth in amended Directive 2262 are facially unconstitutional because, in the absence of more specific guidelines for their implementation, they must inherently operate in an arbitrary fashion. Defendants, for their part, contend that

---

**3.** To the extent that *Pienta v. Village of Schaumburg,* 710 F.2d 1258 (7th Cir.1983), suggests otherwise, this Court, like the other courts to consider the issue, finds it completely unpersuasive. *See, e.g., Crain v. Bd. of Police Commissioners,* 920 F.2d 1402 (8th Cir.1990); *Uryevick v. Rozzi,* 751 F.Supp. 1064 (E.D.N.Y.1990); *Voorhees v. Shull,* 686 F.Supp. 389 (E.D.N.Y.1987); *Philadelphia Lodge No. 5, FOP v. City of Philadelphia,* 599 F.Supp. 254 (E.D.Pa.1984); *Loughran v. Codd,* 432 F.Supp. 259 (E.D.N.Y.1976); *see also Hambsch v. Dept. of Treasury,* 796 F.2d 430 (Fed. Cir.1986) (rational basis standard applied to secret service sick leave regulations); *Korenyi v. Dept. of Sanitation,* 699 F.Supp. 388 (E.D.N.Y. 1988) (rational basis standard applied to sanitation department sick leave regulations).

further guidelines exist, but fail to provide admissible evidence to support this contention.[4] No further guidelines are necessary, however, because amended Directive 2262 itself provides sufficient guidance to pass constitutional muster.

■ A regulation is not rendered unconstitutional simply because its implementation requires the exercise of substantial discretion, unless such exercise presents an unreasonable potential for arbitrary denial of a constitutional right. In the sick leave cases on which plaintiffs here rely, *Uryevick v. Rozzi*, 751 F.Supp. 1064 (E.D.N.Y.1990), and *Voorhees v. Shull*, 686 F.Supp. 389 (E.D.N.Y. 1987), this potential arose because unfettered discretion was delegated to administrators to provide undefined deviations from otherwise highly restrictive home confinement policies. In *Voorhees*, for example, the regulations at issue mandated that officers on sick leave could never leave their residences at all unless supervisors, on unspecified grounds, granted them permission. *Voorhees*, 686 F.Supp. at 390 & n. 1. Similarly, in *Uryevick*, the regulations required a sick police officer never to leave his residence between 9:00 a.m. and 5:00 p.m. unless a Desk Officer determined that his absence could be allowed "for a reasonable purpose and time." *Uryevick*, 751 F.Supp. at 1066.

Here, by contrast, the extent and duration of the home confinement is much less restrictive, and the permitted exceptions more readily available and better defined, than in either *Voorhees* or *Uryevick*. Under the amendments to Directive 2262 that plaintiffs' union negotiated, sick police officers are not required to remain in their residences at any time during their first eight sick days of a given year, nor are officers injured in the line of duty with a definite return-to-duty date subject to any confinement. Those officers

suffering longer-term illnesses that prevent them from returning to work, while required to remain in their residences for most of the day, can leave for up to four hours each day for any reason and can also leave at any time for medical appointments. This is not significantly different from the "confinement" they would suffer while working their ordinary eight-hour workdays as corrections officers— except, of course, that here they are being paid without having to work.

In short, amended Directive 2262 serves a rational purpose on its face, and is neither so restrictive nor so lacking in standards for its implementation as to create an undue risk of inherently arbitrary operation. To be sure, the Directive still leaves certain small decisions to the employer's discretion, such as certain adjustments to recreational time; but leaving such modest adjustments to the exercise of discretion can hardly be deemed irrational or arbitrary. If discretion cannot be exercised in such a small compass, no room will ever be left for fact-specific determinations and the law will become unbending and inequitable.

Accordingly, in addition to being barred by principles of res judicata, plaintiffs' facial challenges to the constitutionality of Directive 2262 must be dismissed on the merits.

■ As mentioned, plaintiffs also claim that the amended Directive is unconstitutional as applied to them individually. For example, several plaintiffs assert that application of the Directive prevented them from taking part in various leisure and social activities, religious activities, family activities, and the like, and also that difficulties associated with "logging out" (telephoning the Health Management Division to request authorization to leave residence) prevented them from engaging in such activities.[5] Other plaintiffs

---

4. Exhibit H to the Wirenius Declaration, on which defendants purport to rely in this regard, is a document entitled "Computer System Medical Diagnosis Code, Health Management Division, Central Sick Desk," that on its face does not appear to create any meaningful guidelines. Moreover, both Deputy Warden Skinner and Deputy Warden Bird conceded at their depositions that no further guidelines exist. *See, e.g.*, Affidavit of Julie Knowles Johnson, dated November 20, 1997 ("Knowles Johnson Aff."), Ex.

R, Skinner Dep. at 101 ("the specific guidelines were Directive 2262, period. Everything else was case by case[.]"); *id.* Ex. S, Bird Dep. at 83–84 (no other specific guidelines).

5. *See* Monahan Compl. ¶¶ 30–36, 47; Aponte Compl. ¶¶ 69–82; Ball Compl. ¶¶ 23–33, 37–38; Basil Compl. ¶¶ 27–28, 33, 36, 46; Foynes Compl. ¶¶ 34–36, 42; Lorde Compl. ¶¶ 37–38, 44–45; Nardiello Compl. ¶¶ 25–43, 80; Netell Compl. ¶¶ 24–29, 39; Rebecca Compl. ¶¶ 24, 29–

complain that they were punished for Directive violations that, in some cases, they deny took place.[6] Finally, certain plaintiffs allege that they were "harassed" by employees of the Health Management Division, who pressured them to return to duty, delayed or denied their promotions, wrongfully branded them as "sick leave abusers," or otherwise applied the Directive to them in an arbitrary manner.[7]

Most of these individual claims prove on inspection to be either sufficiently general or sufficiently inherent in a neutral application of amended Directive 2262 that they reasonably could have been raised, or, in some cases, were in fact raised in *Seabrook* and are consequently barred by res judicata. The remaining claims, such as alleged harassment, wrongful punishment, or disparate application of the sick leave policy, while not barred by res judicata, nonetheless must likewise be dismissed because plaintiffs, in response to defendants' evidentiary showing that these Claims are without factual support, have utterly failed to meet their burden to set forth admissible evidence supporting these claims or otherwise demonstrating that a genuine issue of material fact exists for trial with respect to these claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Virtually conceding as much, plaintiffs counter with the extraordinary argument that it is "unfair" for them to be required to sift through the relevant deposition transcripts to find evidence supporting each of their claims. *See* Pl.Opp.Br. at 20. Similarly, they argue that "[i]t is physically impossible for plaintiffs to review forty (40) deposition transcripts and set forth each allegation which represents a constitutional violation under a particular amendment in a forty (40) page memorandum." *Id.* at 19.[8] Accordingly, plaintiffs oppose summary judgment on the as-applied claims largely by reference to the allegations in their Complaints (with occasional passing reference to deposition testimony not in the record of this motion),[9] and conclude that "[p]laintiffs' action for unconstitutionality cannot be dismissed if they have *alleged* any constitutional violation." *Id.* at 18 (emphasis supplied).

31, 39; Rodriguez Compl. ¶¶ 34–43; Silva Compl. ¶¶ 26, 35–41, 43–48, 56; Almodovar Compl. ¶¶ 45, 53–54, 57 (all *Almodovar* plaintiffs), 79–82 (plaintiff Almodovar), 105–116 (plaintiff Beckford), 142–146, 148–159 (plaintiff Bresloff), 186–203 (plaintiff Cohen), 224–227 (plaintiff Cuevas), 249–281 (plaintiff Deniro), 307–312 (plaintiff Griffin), 345–355 (plaintiff Ilarazza), 373–379 (plaintiff Israel), 406, 409, 417–419 (plaintiff Knowles), 745–751, 757 (plaintiff Tyson), 771–775 (plaintiff Varbero), 780–791, 799–801 (plaintiff Wallace), 825–839 (plaintiff Watford), 856–866 (plaintiff White), 881–887 (plaintiff Whyte–Phillips), 903–905 (plaintiff Whyte), 929–940 (plaintiff Keyes–Alston).

**6.** *See* Ball Compl. ¶¶ 46–48; Basil Compl. ¶¶ 31–32, 35; Lorde Compl. ¶¶ 14–16, 31–32; Nardiello Compl. ¶¶ 28, 48–49, 70; Netell Compl. ¶¶ 23, 30–32; Rebecca Compl. ¶¶ 27–28; Silva Compl. ¶¶ 31, 33–34, 42; Almodovar Compl. ¶¶ 60–64 (all *Almodovar* plaintiffs), 118 (plaintiff Beckford), 204 (plaintiff Cohen), 282–283, 285 (plaintiff Deniro), 316 (plaintiff Griffin), 338, 341–344 (plaintiff Ilarazza), 371, 380–382 (plaintiff Israel), 758 (plaintiff Tyson), 776–777 (plaintiff Varbero), 792 (plaintiff Wallace), 867–868 (plaintiff White), 888 (plaintiff Whyte–Phillips), 925–928 (plaintiff Keyes–Alston).

**7.** *See* Aponte Compl. ¶¶ 23, 30–33; Nardiello Compl. ¶¶ 51, 53, 58–59, 61–69; Netell Compl. ¶ 21; Rodriguez Compl. ¶¶ 12–22, 31–33; Silva Compl. ¶ 29; Almodovar Compl. ¶¶ 46 (all *Almodovar* plaintiffs), 95, 101, 119–120 (plaintiff Beckford), 134, 160–161 (plaintiff Bresloff), 318–321 (plaintiff Griffin), 338, 341–344 (plaintiff Ilarazza), 404 (plaintiff Knowles), 752–756 (plaintiff Tyson).

**8.** Of course, the place for such references was not in plaintiffs' memorandum of law at all, *see* Local Civil Rule 56.1, but in their Rule 56.1 Statement, on which no page limit was set but which, nevertheless, is utterly bereft of record citations relating to the particulars of any of plaintiffs' claims of as-applied unconstitutionality. *Cf. Riley v. Town of Bethlehem*, 5 F.Supp.2d 92 (N.D.N.Y.1998) (denying motion for summary judgment for failure to supply record citations supporting statement of material facts); *see also Union Carbide Corp. v. Montell N.V.*, 179 F.R.D. 425 (S.D.N.Y.1998). Also, it must be remembered that 39 of the 41 depositions taken in this litigation were of plaintiffs themselves, who remained available to their counsel to supply appropriate affidavits.

**9.** The one other item on which plaintiffs purport to rely in this regard, the Affidavit of Ms. Knowles Johnson, simply repeats conclusions rather than avers admissible facts.

This strategy is squarely at odds with the requirements of Rule 56. "Simple assertions by counsel that there are facts in the case that should defeat summary judgment are, by their nature, conclusory and do not meet plaintiffs' burden in the face of a motion for summary judgment." *Sellin v. Rx Plus, Inc.*, 730 F.Supp. 1289, 1293 n. 3 (S.D.N.Y.1990). Nor is plaintiffs, position buttressed by their frequent fallback to rhetorical blends of bombast and bromide. Plaintiffs having failed to submit any admissible evidence in support of their "as applied" claims, those claims must be dismissed.

Similarly, plaintiffs have provided no admissible evidence in support of their claims that defendants engaged in a conspiracy, in violation of 42 U.S.C. § 1985(3), for the purpose of depriving plaintiffs of the equal protection of the laws or of their privileges and immunities under the law. *See Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir.1988). In particular, plaintiffs provide no evidence that the "predominant purpose" of the alleged conspiracy "was interference with, or punishment for exercise of" such rights. *Spencer v. Casavilla*, 44 F.3d 74, 79 (2d Cir.1994). Therefore their claims pursuant to 42 U.S.C. § 1985(3) must be dismissed as well.

Finally, for the same reason, plaintiff Lorde's claim of disability discrimination in violation of New York State law, *see* Lorde Compl. ¶¶ 67–76, must be dismissed, Lorde having presented no admissible evidence from which a reasonable juror could conclude that any of the employment actions Lorde complains of were motivated by such discrimination.[10]

In sum, each of the plaintiffs' Complaints are hereby dismissed with prejudice. Clerk to enter judgment.

SO ORDERED.

---

**10.** To the extent that plaintiffs' Complaints might also be somehow read to assert other State law causes of action, those claims must likewise be dismissed for failure to provide admissible evidence supporting such claims.