Wilfredo TORRES, Plaintiff,

v.

The CITY OF NEW YORK, the Commissioner of the New York City Department of Corrections, Dr. Okonta, Dr. Barouch, Deputy Warden James Bird and Unidentified Employees of the New York City Department of Corrections and the Health Management Division, Defendants.

No. 99 Civ. 9026(VM).

United States District Court, S.D. New York.

Aug. 1, 2001.

Fred Lichtmacher, Cheda & Sheehan, Jackson Heights, NY, for Plaintiff.

K. Lesli Ligorner, Michael D. Hess, Corporation Counsel of the City of N.Y., New York City, for Defendants.

## DECISION AND ORDER

MARRERO, District Judge.

Wilfredo Torres ("Torres"), a former Correction Officer in the New York City Department of Correction ("DOC"), brings this action against the City of New York, the Commissioner of DOC, Dr. Okonta, Dr. Barouch, Deputy Warden James Bird and unidentified employees of DOC and its Health Management Division ("HMD"). Torres, who was out on sick leave from DOC for approximately one year, claims that DOC's sick leave policy is unconstitutional as applied to him and others slated for permanent disability. Torres asserts claims under 42 U.S.C. § 1983 for violations of the First, Fourth, and Fourteenth Amendments, as well as pendant state law claims of medical malpractice, intentional infliction of emotional distress, and negligent hiring and retention.

The City, DOC, Drs. Okonta and Barouch, and Deputy Warden Bird (hereinafter the "Defendants") now move to dismiss pursuant to Fed.R.Civ.P. 12(c), arguing, among other things, that (1) the entire complaint is barred by the doctrine of res judicata; (2) the complaint fails to state a claim for which relief could be granted under the First Amendment's Free Exercise Clause, the Fourteenth Amendment's Due Process Clause and Equal Protection Clause, or for medical malpractice.

## BACKGROUND

In March 1984, Torres was appointed to DOC as a Correction Officer. Compl. ¶ 16. While employed by DOC, Torres was a member of a labor union, the Correction Officers' Benevolent Association ("COBA"). In October 1988, Torres was injured by inmates in a riot at the Brooklyn House of Detention ("BHD"). *Id.* ¶ 16. Nine years later, in October 1997, Torres stumbled on a loose carpet at BHD and remained in the hospital for three days. *Id.* ¶ 17. Torres alleges that this fall brought up memories of the 1988 riot and caused him severe emotional distress. *Id.* As a result, Torres was placed on sick leave and never returned to work before being granted permanent disability retirement in September 1998. *Id.*

Torres alleges that while on sick leave, DOC "worked on him and tried to harass him out of applying for permanent disability." *Id.* ¶ 17. Pursuant to DOC's sick leave policy, as promulgated in Directive 2262, an officer on sick leave is required to remain in his residence except for four "recreation hours" or when logged out for medical appointments. Torres claims that he was denied permission to attend a fellow Correction Officer's funeral service and was only permitted to attend part of the wake. *Id.* He further asserts that he was harassed by continual home visits by DOC employees. *Id.* Finally, he alleges that HMD psychiatrists or psychologists committed medical malpractice because they failed to use reasonable care and conspired to maliciously and deliberately ignore his condition of total disability.

In 1995, COBA president Norman Seabrook, along with two other correction officers, brought an action in the Eastern District of New York asserting that DOC's sick leave policy was unconstitutional (the "Seabrook Action"). *See* Compl., *Seabrook v. Jacobson*, No. 95 Civ. 4194 (E.D.N.Y.) (attached as Ex. A to Defendants' Notice of Motion to Dismiss). The plaintiffs sought both damages and equitable relief on behalf of COBA.

In April 1996, the Seabrook Action settled, resulting in a settlement stipulation approved by Judge Frederic Block. *See*

Stipulation and Order of Settlement and Discontinuance, *Seabrook v. Jacobson,* No. 95 Civ. 4194 (E.D.N.Y.) (attached as Ex. B to Defendants' Notice of Motion to Dismiss) (the "COBA Stipulation"). The COBA Stipulation stated that the action had been commenced by Seabrook as President of COBA, and provided that it resolved the claims that "Section VII of defendants' sick leave policy, Directive 2262, is unconstitutional on its face and as applied, and violated [the plaintiffs'] constitutional rights and the rights of similarly situated sick employees in violation of 42 U.S.C. § 1983." *Id.* The COBA Stipulation further provided that these claims were "dismissed, with prejudice" and that notice of any policy changes were to be provided to COBA.

Pursuant to the COBA stipulation, DOC amended the sick leave policy, with COBA's cooperation. The amended policy provided, among other things, that officers otherwise out on sick leave are required to remain in their residences except for their four "recreation hours" or when they log out for medical appointments. While correction officers are on sick leave and subject to the in-residence rules, they are also subject to home visitation by home visit captains designed to deter the abuse of sick leave benefits, evaluate the correction officer's medical condition and ability to perform his duties, and investigate officers suspected of feigning illness.

In *Monahan v. City of New York Dep't of Correction,* 10 F.Supp.2d 420 (S.D.N.Y. 1998) *aff'd* 214 F.3d 275 (2d Cir.2000), twelve former and current correction officers challenged the constitutionality of DOC's sick leave policy, raising claims under First, Fourth, Fifth and Fourteenth Amendments. The district court dismissed these claims because they were barred by res judicata insofar as the relevant issues had been litigated and disposed in the *Seabrook* action. The claims which the court determined were not barred by res judicata, "such as alleged harassment, wrongful punishment, or disparate application of the sick leave policy," were dismissed on summary judgment.

On appeal, the Second Circuit affirmed the district court, but also noted that "plaintiffs' as-applied claims regarding the right to participate in 'constitutionally-protected activities' fail to survive the initial res judicata evaluation." 214 F.3d at 292. For example, the Circuit Court held specifically that the *Monahan* plaintiffs' claims that they were denied leave to attend church services "fall within the same transaction or series of transactions at issue in the *Seabrook* litigation." *Id.* at 293 (internal quotation omitted).

The named defendants now move under Fed.R.Civ.P. 12(c) to dismiss Torres's action, arguing that (1) the claims are barred by both the settlement of the Seabrook Action and the court's decision in *Monahan;* (2) even if the claims are not barred by res judicata, the complaint should be dismissed for failure to state a claim under § 1983, for conspiracy, and for medical malpractice.

*DISCUSSION*

*Res Judicata*

■ Res judicata bars a subsequent lawsuit where the defendant can show: (1) an adjudication on the merits in the previous action; (2) that the previous lawsuit involved the plaintiffs, or those in privity with them; and (3) that the claims asserted in the subsequent suit were raised, or might have been raised, in the prior proceeding. *See Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980).

■ The defendants characterize Torres's constitutional claim as a facial chal-

lenge to the DOC sick leave policy, and argued that the settlement of the prior facial challenge in *Monahan* thus operates to bar Torres's complaint. Torres, however, attempts to state a claim based on how the policy was applied to him, as well as others who were slated for permanent disability, in a disparate manner. Torres does not assert, as the Seabrook plaintiffs had, that the sick leave policy is per se unconstitutional. Such a distinction was recognized by the district court in *Monahan*. There, Judge Rakoff reviewed a litany of claims that the sick leave policy was unconstitutionally applied to the plaintiffs and determined that although most claims were barred by res judicata because they were sufficiently general or sufficiently inherent in a neutral application of Directive 2262 that they reasonably could have been raised in *Seabrook*, claims such as alleged harassment, wrongful punishment, or disparate application of the sick leave policy were not barred by res judicata. *See Monahan*, 10 F.Supp.2d at 426.

Here, Torres asserts that DOC enforced its sick leave policy against him and others slated for permanent disability in a disparate manner, resorting to harassment and psychiatric and medical malpractice. Specifically, as set forth in the complaint, Drs. Perry and Barouch dismissed Torres's claimed debilitating psychiatric condition and threatened that he would be terminated without benefits if he did not recant his assertion of disability. The HMD also allegedly refused to permit Torres to go to a funeral, and constantly sent officers to his house to harass him.

Nevertheless, as the Second Circuit held in *Monahan*, those claims that fall within the same transaction or series of transaction as at issue in *Seabrook* are barred by res judicata. 214 F.3d at 293. That encompasses Torres's claim that DOC initially denied his request to attend a col-

league's funeral services. Those claims which are anomalous to the *Seabrook* plaintiffs' claims, however, such as the claim that Drs. Barouch and Okonta deliberately abused their positions as medical professionals to threaten and cajole Torres out of applying for permanent disability benefits, or that the leave policy was disparately enforced against permanent leave candidates, are not barred.

*First Amendment*

■ The Defendants argue that Torres's claim under the First Amendment Free Exercise Clause should be dismissed for failure to state a claim as well. The gravamen of Torres's claim is that his right to the free exercise of religion was violated when DOC "refused to let [him] go to the funeral" of "close friend and fellow Corrections Officer Dilbert." Compl. ¶ 17. But Torres also avers that he appealed the decision and was thus "able to attend part of the wake although he missed the services." *Id.*

■ To prevail on his Free Exercise claim, Torres must first show that a state action sufficiently burdened his exercise of religion. *See Sherbert v. Verner*, 374 U.S. 398, 403, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *Genas v. Dep't of Corr. Servs.*, 75 F.3d 825, 831 (2d Cir.1996). Torres's First Amendment claim is insufficient to survive a motion to dismiss. By his own averment, he successfully appealed and was ultimately permitted to attend his colleague's services. From the complaint, it is difficult to garner precisely how his right to the free exercise of religion was substantially burdened. Torres also alleges that he was deprived of his First Amendment right to intimate marital association, but does not plead any facts whatsoever in support of such a claim. Accordingly, Torres's First Amendment claims are dismissed.

## Equal Protection

 To state a claim for an equal protection violation, Torres must allege that a government actor intentionally discriminated against him. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 213, 227–29, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995). Defendants sole argument for dismissing the equal protection claim is that Torres does not allege that he was subjected to intentional discrimination. In fact, Torres does allege that he suffered intentional discrimination. He alleges that the defendants applied the DOC sick leave policy in a disparate manner, through harassment and other means, against him and others slated for permanent disability. Accordingly, the Defendants' motion to dismiss Torres's equal protection claim is denied.

## Conspiracy

The Defendants argue that Torres's allegation of a conspiracy are vague and conclusory and thus insufficient to state a claim under § 1983. In his response to the motion, Torres fails to address this argument or state any reason why his conspiracy claim should not be dismissed. Accordingly, to the extent Torres asserted a claim for conspiracy, it is dismissed.

## Medical Malpractice

Finally, Defendants argue that Torres has failed to state a claim for medical malpractice against Drs. Okonta and Barouch, because he has not even claimed that he was ever treated by either Dr. Barouch or Okonta, but rather merely that they read medical reports from other psychiatrists. The Defendants also argue that Torres has failed to comply with N.Y. C.P.L.R. § 3012(a) by filing a certificate of merit.

 Under New York law, the requisite elements of proof in a medical malpractice action are (1) a deviation or departure from accepted practice, and (2) evidence that such departure was a proximate cause of injury or damage. *See Lyons v. McCauley,* 252 A.D.2d 516, 517, 675 N.Y.S.2d 375, 376 (2d Dep't 1998). Here, Torres fails to allege, and admits that he does not even know, whether Drs. Okonta and Barouch are even medical doctors. He does, however, allege that he had a professional medical relationship with both doctors, as either psychologists or psychiatrists for DOC. The claim is not specific enough to survive a motion to dismiss, but leave to re-plead will be permitted.

As regards the certificate of merit, the Court embraces the well accepted policy that actions should be considered on their merits, particularly when there is no showing of prejudice suffered by the movant. *See American Alliance Ins. Co. v. Eagle Ins. Co.,* 92 F.3d 57, 61 (2d Cir.1996). This Court could find no case where a medical malpractice claim was dismissed with prejudice for failure to comply with the certification provision in question. Accordingly, leave to file the certificate within thirty (30) days of the date of this Decision and Order is granted.

## ORDER

For the reasons set forth above, it is hereby

ORDERED that the defendants motion to dismiss [8–1] is GRANTED in part and DENIED in part; and it is further·

ORDERED that Torres's motion for leave to file a certificate of merit pursuant to N.Y. C.P.L.R. § 3012(a) [10–1] is GRANTED.

The parties are directed to appear for a case management conference before the Court in Courtroom 618,· United States

Courthouse, 40 Foley Square, New York, New York on August 17, 2001 at 1:30 p.m.

**SO ORDERED.**